(No. 34699.—

PAUL L. COTTON, Appellee, *vs.* LOUISVILLE AND NASHVILLE RAILROAD COMPANY, Appellant.

*Opinion filed May 21, 1958—Rehearing denied June 18, 1958.*

Schaefer, J., and Davis, C.J., dissenting.

WALKER & WILLIAMS, of East St. Louis, and BALTZ & GUYMON, of Belleville, (H. W. WILLEN, of Louisville, Kentucky, RALPH D. WALKER, and EDWARD G. MAAG, both of East St. Louis, of counsel,) for appellant.

DAN McGLYNN, and McGLYNN & McGLYNN, both of East St. Louis, (EDWARD J. MURPHY, of counsel,) for appellee.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

On August 20, 1955, plaintiff, a resident of Kentucky, was injured in the defendant's switchyards in Covington, Kentucky, while employed as a brakeman. On December 19, 1955, plaintiff instituted suit in the city court of East St. Louis, Illinois, against the defendant, claiming damages in the sum of $125,000 and alleging violation of the Federal Employers' Liability Act, 45 U.S.C.A. secs. 51-59, and the Federal Safety Appliance and Equipment Act, 45 U.S.C.A. secs. 1-16.

On January 16, 1956, defendant filed a motion to dismiss the action upon the doctrine of *forum non conveniens.* On March 8, 1956, the motion was denied, and on May 21 and 22, 1956, this cause was tried before a jury which returned a verdict in the sum of $75,000. Judgment thereon was affirmed by the Appellate Court, Fourth District, appearing in 15 Ill. App.2d 53. The trial court and the Appellate Court determined that defendant's motion for dismissal of plaintiff's suit upon the ground of *forum non conveniens* was without merit. To resolve the propriety of this determination this court granted leave to appeal, and we will focus our attention on this single issue.

Before considering this issue, however, we shall review briefly the facts and circumstances relating to plaintiff's accidental injuries, which are substantially uncontroverted in the record.

On August 20, 1955, while plaintiff was employed by defendant as a switchman and engaged in interstate commerce, it was necessary for plaintiff to release certain brakes. In doing so, he placed both hands on the brake wheel, jerked it four or five times in order to get more slack, whereupon the brake wheel suddenly spun, jerking him into a twisted position, and he felt a sharp, severe pain in the lower part of his back. Shortly thereafter, when he bent over to attempt to throw a switch, he could not straighten up.

These circumstances were reported to the foreman, Howard McManamas, and plaintiff was taken to the hospital, where Dr. Salsbery examined him and found a tenderness in the fifth lumbar and first sacral vertebra. The doctors testifying for both plaintiff and defendant agreed that plaintiff had a ruptured disc, which was a permanent disabling injury that produced pain, and would interfere with the performance of manual work. It was also agreed that an operation would be of questionable value.

Plaintiff further testified that he was 38 years old, that he had two years of high school education, had no other occupation or training, except farming and railroading; that he had been working for the L. & N. since September, 1940; that his wages for the year 1953 were $4,566.88, and for 1954 were $4,681; that he has pain continuously since the accident, and difficulty sleeping at night and must spend many hours each day in bed.

With reference to the controverted motion to dismiss, defendant asserted therein that the plaintiff has never been a resident of East St. Louis, Illinois; that defendant would present the testimony of eight occurrence witnesses, all of whom lived in and near Covington, Kentucky, which is 358 miles from East St. Louis, Illinois; that defendant would present the testimony of three doctors who live either in Covington, Kentucky, or nearby Cincinnati, Ohio; that defendant is amenable to process in the States of Kentucky

and Ohio in both State and Federal courts, both of which are near the residence of plaintiff; that all witnesses are in close proximity to the place of the occurrence; that in order to present the medical aspects of this case it would be necessary for the doctors, hospital staff and witnesses to lose five days of their time, thus causing serious interference in the schedules of the doctors and hospital attaches; that the added expense would exceed $2,000; that submitting evidence in the form of deposition is ineffective and results in a denial of due process of law; that plaintiff's cause of action could be reinstituted in another forum at any time before August, 1958, and thus obviate the running of the statute of limitations; and that this congestion of court calendars and public expense warrant the dismissal of the suit.

In reply thereto, plaintiff admitted that the accident did not take place in the territorial limits of East St. Louis, and that defendant is a Kentucky corporation. However, plaintiff denied that defendant would present the testimony of three doctors and the hospital records; that defendant's witnesses would be required to lose five days of work; that the attendance of medical witnesses for defendant would seriously disrupt the doctors' work, requiring them to lose four days from their professional pursuits; and that defendant would incur the $2,000 expenses alleged as a result of the inconvenient forum selected by plaintiff.

Subsequent to the trial the defendant, in its post-trial motions, again alleged as error the failure of the court to dismiss the cause on the doctrine of *forum non conveniens,* and submitted an affidavit by chief deputy county treasurer Moeller, stating that there were no funds available for the payment of jurors; that warrants issued for jury service would not be redeemable at par until approximately December 10, 1956, but that the warrants could be cashed at a discount of 5 per cent.

Plaintiff thereupon filed a further reply, alleging that defendant is a railroad corporation licensed to do business in the State of Illinois, has a large switch yard in East St. Louis and many miles of track in the State of Illinois; that on the actual trial of the case defendant presented the testimony of four witnesses, none of whom were occurrence witnesses, three of these witnesses were employees of the defendant who inspected the cars involved sometime after the accident, and testified to having no knowledge of how the accident happened; that depositions for evidence of these three witnesses were taken by agreement between counsel at Latonia, Kentucky; that one of the four witnesses who testified was Dr. Otto H. Salsbery, orthopedist, who has offices in Covington, Kentucky; that his deposition had been taken for evidence but Dr. Salsbery was present in court and testified at the trial; that on the trial of the case plaintiff produced a conductor of the crew with which plaintiff was working, along with an evidence deposition of Dr. Nathan Flax; that the trial lasted two days, and that Dr. Salsbery, defendant's medical witness, was required to be there only one day.

Attached to this reply was an affidavit of Henry Behnen, clerk of the city court of East St. Louis, stating that there were no cases tried during the week when the case was originally set, even though a panel of 32 jurors was present; that in the case of Cotton v. Louisville and Nashville Railroad Co. motion for a continuance was filed by defendant on May 15, 1956, the day the case was set for trial on the trial docket; that the case was reset on May 21, 1956; that the jury panels were being recalled on May 21 for jury duty regardless of whether or not the case of Cotton v. Louisville and Nashville Railroad Co. was set for that day, and that the Cotton case in noway cost the county any additional money for a juror's fee.

In determining the propriety of defendant's motion to

dismiss the cause on the ground of the doctrine of *forum non conveniens,* we shall note first the application of the doctrine in Illinois; then analyze the Federal and State court decisions involving the application of the doctrine in F.E.L.A. cases, including dissenting as well as majority opinions; and, finally, evaluate, in the light of such analysis, whether the doctrine should properly be invoked in the case at bar.

Generally speaking, *forum non conveniens* deals with the discretionary power of the court to decline to exercise a possessed jurisdiction whenever, because of varying factors, it appears that the controversy may be more suitably or conveniently tried elsewhere.

The applicability of this doctrine to F.E.L.A. cases has never been adjudicated by this court. In the recent case of *People ex rel. Atchison, Topeka & Santa Fe Railway Co. v. Clark,* 12 Ill.2d 515, a majority of this court determined only that *mandamus* was not the proper remedy to expunge an order denying a motion to dismiss based on *forum non conveniens.*

In support of its contention that the doctrine of *forum non conveniens* is established law in Illinois, defendant cites *Whitney v. Madden,* 400 Ill. 185. This cause involved an action by a nonresident for a libel occurring outside of the State, and service was obtained upon the nonresident while he was in Chicago between trains. The court, in approving the dismissal of the cause, emphasized that the record contained an unchallenged affidavit that "the interested parties were residents of other states, and that the defendant has no property and conducted no business in this state." It is apparent, in view of the difference in the operative facts and the basis of the decision, that the *Madden case* is of little value as a precedent herein.

In determining the applicability of the doctrine of *forum non conveniens* to F.E.L.A. cases, in the absence of prece-

dent in this jurisdiction, it must be noted first that section 6 of the F.E.L.A., as amended in 1910, sets forth broad venue provisions. It provides: "Under this act an action may be brought in a circuit court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this act shall be concurrent with that of the courts of the several states, and no case arising under this act and brought in any state court of competent jurisdiction shall be removed to any court of the United States."

This section has been considered many times by our nation's highest court, and generally without unanimity. The reflections of both the majority and minority in the more important cases will be helpful in resolving the issues herein. In *Baltimore & Ohio Railroad Co.* v. *Kepner,* 314 U.S. 44, 86 L. ed. 28, decided in 1941, the railroad instituted suit in Ohio, where the accident occurred, to enjoin the injured employee from prosecuting an F.E.L.A. suit in the District Court of New York. The railroad contended that the employee was acting in a vexatious and inequitable manner in prosecuting the suit in a distant jurisdiction, when a more suitable and convenient forum lay at his doorstep, and that Congress, in fixing venue in F.E.L.A. cases did not mean that a State court was powerless to enjoin an inequitable exercise of that privilege.

In rejecting that contention, the United States Supreme Court stated at page 54: "A privilege of venue granted by the legislative body which created this right of action cannot be frustrated for reasons of convenience or expense. If it is deemed unjust, the remedy is legislative, a course followed in securing the amendment of April 5, 1910, for the benefit of employees. * * * Whatever burden there

is here upon the railroad because of inconvenience or cost does not outweigh the plain grant of privilege for suit in New York."

Mr. Justice Frankfurter, disagreeing, stated that the majority decision unjustifiably limited the long settled powers of the State courts and thereby brought into disequilibrium the relationship of Federal and State courts; that the power of courts of equity to prevent a misuse of litigation, by enjoining resort to vexatious and oppressive foreign suits, cannot be denied; and that this familiar doctrine of *forum non conveniens*, under which a court having statutory jurisdiction may decline its facilities to a suit that in justice should be tried elsewhere, cannot be questioned.

The dissenting opinion further stated: "Congress was aware of the hardship by which under the original Employers' Liability Act of April 22, 1908, the plaintiff could bring his action only at the railroad's 'residence.' [Citation] The amendment of 1910 greatly enlarged the range of a plaintiff's convenience in bringing suit. It is not disputed that the amendment was intended to open to a plaintiff courts from which he previously was barred. * * * The problem is whether the Act was intended to give a plaintiff an absolute and unqualified right to compel trial of his action in any of the specified places he chooses, thereby not only depriving state courts of their old power to protect against unjustly oppressive foreign suits, but also forbidding federal courts to decline jurisdiction 'in the interest of justice' on familiar grounds of forum non conveniens. * * * It does not comport with equity and justice to allow a suit to be litigated in a forum where, on the balance, unnecessary hardship and inconvenience would be cast upon one party without any compensatingly fair convenience to the other party, but where, on the contrary, the suit might more conveniently be litigated in another forum available equally to both parties."

The following year the United States Supreme Court, in *Miles* v. *Illinois Central Railroad Co.* 315 U.S. 827, 86 L. ed. 1129, again reviewed "the important federal question as to the applicability of Section 6 of the F.E.L.A. to this situation." The railroad therein obtained an injunction against Mrs. Miles from prosecuting an F.E.L.A. action in a Missouri State court for the death of her husband, on the ground of inconvenience in the transportation of 20 employees, who were necessary witnesses, from Memphis, Tennessee, to St. Louis, Missouri. The majority opinion held that the injunction was improvidently issued. Mr. Justice Jackson wrote a most realistic concurring opinion, noted hereinafter. Mr. Justice Frankfurter again dissented, reitering that section 6 merely insures concurrent jurisdiction between Federal and State Courts, and concluding in this fashion. "The power of equity to restrain the prosecution of unconscionable suits has been a part of the very fabric of the state courts as we have known them in our whole history. And nothing in the Federal Employers' Liability Act, its language, its history, or its policy, warrants a denial of this power to the states."

In 1948 Congressional action was taken on this problem. From the Congressional Record it appears that after full debate on the underlying policy considerations, Congress refused to enact a bill which would have amended section 6 of the F.E.L.A. by limiting the employee's venue to his place of injury, or to the place of residence. However, Congress did adopt the Judicial Code, which included section 1404(a), which has been construed to make the doctrine of *forum non conveniens* applicable to F.E.L.A. cases brought in Federal courts. (*Ex parte Collett,* 337 U.S. 55, 93 L. ed. 1207.) Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

This section was construed by the United States Supreme Court in 1953 in *Pope* v. *Atlantic Coast Line Railroad Co.* 345 U.S. 379, 97 L. ed. 1094. In that case the railroad secured an injunction in the Georgia State court enjoining the employee from prosecuting an F.E.L.A. action in Alabama for injuries sustained in Georgia, which was the residence and place of employment of the employee. The railroad admitted that the *Miles case* had resolved the venue issue contrary to its claims, but argued that the case was overruled by implication by the enactment of section 1404(a). The United States Supreme Court rejected that contention and held that the Georgia Supreme Court had failed to give proper effect to the venue provisions of the act. The court explained that section 1404(a) addresses itself only to that Federal forum in which a lawsuit has been initiated, vesting it with power to transfer a transitory cause of action to a more convenient Federal court, but in no way authorizes a State court to enjoin a litigant from prosecuting a transitory cause of action in another State. The court, in analyzing the effect of section 1404(a) of the Judicial Code on section 6 of the F.E.L.A. stated: "Congress might have gone further; it might have vested state courts with the power asserted here. In fact, the same Congress which enacted section 1404(a) refused to enact a bill which would have amended section 6 of the Federal Employers' Liability Act by limiting the employee's choice of venue to the place of his injury or to the place of his residence. The proposed amendment— the Jennings Bill— focused Congress' attention on the decisions of this Court in both the Miles and the Kepner Cases. The broad question—involving many policy considerations—of whether venue should be more narrowly restricted, was reopened; · cogent arguments—both pro and con—were restated. Proponents of the amendment asserted that, as a result of the Miles and Kepner decisions, injured employees were left free to abuse their venue rights under

section 6 and 'harass' their employers in distant forums without restriction. They insisted that these abuses be curtailed. These arguments prevailed in the House, which passed the Jennings Bill, but the proposed amendment died in the Senate Judiciary Committee, and section 6 of the Federal Employers' Liability Act was left just as this Court had construed it. * * * the Miles Case is still controlling; since we find no legislation which has devitalized it in any way, and since we find affirmative evidence that Congress chose to let it stand, the judgment below must be reversed."

Again Mr. Justice Frankfurter dissented, and observed that "there can be no doubt that the choice of Alabama as a forum was purely vexatious. On this record there is not the least thread of relevant connection between this litigation and Alabama."

As a result of the broad interpretation given section 6 of the F.E.L.A. in the *Miles* and *Kepner cases,* many jurisdictions were led to believe that even though *forum non conveniens* was a part of the local law, its application was precluded in F.E.L.A. cases. This question has been set at rest by the decision in *Missouri ex rel. Southern Railway Co.* v. *Mayfield,* 340 U.S. 1, 95 L. ed. 3, decided in 1950. In this case the injury giving rise to liability for negligence took place in the State of Tennessee. The Missouri trial court refused to invoke the doctrine of *forum non conveniens* and the Supreme Court of Missouri sustained the lower court, stating that they were acting under the compulsion of the *Miles* and *Kepner cases.* Rejecting this view, Mr. Justice Frankfurter, speaking for the United States Supreme Court, stated: "Therefore, if the Supreme Court of Missouri held as it did because it felt under compulsion of federal law as enunciated by this Court so to hold, it should be relieved of that compulsion. It should be free to decide the availability of the principle of forum non conveniens in these suits according to its own local law." Upon re-

mandment the Missouri court rejected the doctrine of *forum non conveniens* in F.E.L.A. cases. *State ex rel. Southern Railway Co.* v. *Mayfield,* 362 Mo. 101, 240 S.W.2d 106, rejected the doctrine on the ground that it would violate a constitutional provision which is identical to section 19 of article II of the Illinois constitution, which provides: "Every person ought to find a certain remedy in the laws for all injuries and wrongs which he may receive in his person, property or reputation."

A contrary position was taken by the Supreme Court of California, which invoked the doctrine of *forum non conveniens* in an F.E.L.A. case. (*Price* v. *Atchison, Topeka & Santa Fe Railway Co.* 42 Cal.2d 577, 268 P.2d 457.) In that case the plaintiff was a resident and citizen of New Mexico, the accident happened in New Mexico, defendant was a Kansas corporation and suit was brought in Los Angeles, 1,000 miles away from all the witnesses. The same law firm had filed 67 similar actions against the same defendant in the superior court of Los Angeles and 25 of such imported cases in the Federal District Court of California.

As to the hardships imposed, the court said: "It was uncertain, however, whether any of the doctors would find it possible to leave their practice to attend the trial in Los Angeles, and if not, then, defendant would be obliged to present their testimony by deposition and the loss of the effectiveness of their personal appearances as witnesses. Defendant estimated that the trial would last possibly from five to seven days and that the extra cost of defending the action in Los Angeles rather than in New Mexico would be $4650."

The court further said: "Although there is no statutory authorization for such transfer by State courts, and although under the doctrine of forum non conveniens a cause arising outside of California will be dismissed rather than transferred, we are of the view that the injustices

and burdens on the local courts and taxpayers, as well as on those leaving their work and business to serve as jurors, which can follow from an unchecked and unregulated importation of transitory causes of action for trial in this State * * * require that our courts acting upon the equitable principles and within the constitutional limits hereinabove stated, exercise their discretionary powers to decline to proceed in those causes of action which they conclude, on satisfactory evidence, may be more appropriately and justly tried elsewhere. * * * A contrary policy would result in the anomaly that a Federal district court situated in California could in the interest of justice transfer to another district or division an F.E.L.A. action filed here, whereas, regardless of the equities involved, State courts would be powerless to decline to exercise jurisdiction over comparable actions brought in those courts. We are persuaded that such a result would be promotive of neither fairness, justice, nor Congressional intent when removal power was bestowed upon the Federal district courts."

The California court explained and distinguished its prior decision in *Leet* v. *Union Pacific Railroad Co.* 25 Cal.2d 605, 155 P.2d 42, where it had refused to apply the doctrine of *forum non conveniens* to an F.E.L.A. case, on the ground that the holding was required under its interpretation of the *Miles case*. That interpretation, however, was modified by the *Mayfield case,* which recognized the power of a State to deny access to its courts to persons seeking recovery under the F.E.L.A.

Justice Carter, the author of the opinion in the *Leet case,* dissented in the *Price case.* His remarks respecting the modification of the F.E.L.A. effected by the majority opinion merit our attention: "The railroad companies have been able to accomplish through the majority decision in this case what they have been unable to accomplish through the legislative and executive branches of both the state and

federal governments. At the 1953 session of the California Legislature two bills were introduced which purported to incorporate the doctrine of *forum non conveniens* into the law of this State. These bills were Senate Bills 789 and 1960. They passed both Houses of the legislature and Senate 789 was vetoed by the then Governor Earl Warren, now Chief Justice of the Supreme Court of the United States. In his veto message on this Bill he stated: 'If we are to whittle away in this manner the benefits conferred by the Federal Employers' Liability Act, it would soon lose its national uniformity and could at least substantially weaken the purposes for which the act was originally designated. I am not advised that other states have enacted such legislation. The fact that this act has been in effect since 1908 without similar legislation being enacted in other states would indicate a nationwide appreciation of the desirability for this uniformity. At all events if any of the provisions of the act result in a denial of justice either to plaintiffs or defendants a situation could be remedied nationwide by a simple act of Congress.' "

Similarly, in Illinois, an attempt to incorporate the doctrine of *forum non conveniens* into law was defeated. The General Assembly in 1951 defeated a bill entitled, "For an Act prohibiting the bringing or prosecuting in this state of actions to recover damages for personal injuries occurring outside the state under specified circumstances." It may be noted, therefore, that there is no valid legislation or constitutional provision restraining this court from exercising its jurisdiction under the doctrine of *forum non conveniens* in F.E.L.A. cases.

We cannot agree with Justice Carter's further reasoning that State courts are still under compulsion to entertain all F.E.L.A. cases, despite their origin in remote areas, or his interpretation that the *Pope* decision repudiated the holding in the *Mayfield case.* The result reached by the majority in that case is sound and right, finding firm sup-

port in logic and legislative history. We hold, therefore, that there is available in Illinois the doctrine of *forum non conveniens* as a ground for refusal by a court to exercise jurisdiction over a cause of action arising beyond the State's boundaries.

The decision as to whether the facts of a particular case warrant dismissal under the doctrine of *forum non conveniens* lies primarily within the discretion of the trial court. The trial court's discretionary action in retaining or declining jurisdiction is subject to reversal on appeal only where there has been an abuse of discretion.

What considerations, factors and circumstances should play a part in a court's thinking in the exercise of this discretionary act? Able counsel for both sides cite cases giving their respective views on this question. The railroad finds comfort in the language of Mr. Justice Jackson in the case of *Gulf Oil Co.* v. *Gilbert,* 330 U.S. 501, 91 L. ed. 1055: "The principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute. These statutes are drawn with a necessary generality and usually give a plaintiff a choice of courts, so that he may be quite sure of some place in which to pursue his remedy. But the open door may admit those who seek not simply justice but perhaps justice blended with some harassment. A plaintiff sometimes is under temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself. * * * Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The

court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."

The same Mr. Justice Jackson seemed to please the railroad's adversary with what he had to say in his concurring opinion in the *Miles case* (315 U.S. at page 705) : "I agree with the conclusion and, with exceptions stated herein, with the opinion of Mr. Justice Reed. * * * Realistically considered, the issue is earthy and unprincipled. So viewed, the real issue is whether a plaintiff with a cause of action under the Federal Employers' Liability Act may go shopping for a judge or a jury believed to be more favorable than he would find in his home forum. An advantage which it is hoped will be reflected in a judgment is what makes plaintiffs leave home and incur burdens of expense and inconvenience that would be regarded as oppressive if forced upon them. And that is what makes railroads seek injunctions such as this one. The judiciary has never favored this sort of shopping for a forum. It has sought to protect its own good name as well as to protect defendants by injunctions against the practice of seeking out soft spots in the judicial system in which to bring particular kinds of litigation. But the judges with lawyerly indirection have not avowed the interest of the judiciary in orderly resort to the courts as a basis for their decision, and have cast their protective doctrines in terms of shelter-

ing defendants against vexatious and harassing suits. This judicial treatment of the subject of venue leads Congress and the parties to think of a choice of a forum as a private matter between litigants and in cases like the present obscures the public interest in venue practices behind a rather fantastic fiction that a widow is harrassing the Illinois Central Railroad. If Congress had left us free to consult the ultimate public interest in orderly resort to the judicial system I should agree with Mr. Justice Frankfurter's conclusion. But the plaintiffs say they go shopping, not by leave of the court themselves, but by the authority of Congress. Whether Congress has granted such latitude is our question."

The Justice then proceeds to analyze the terms of the provision and states: "Unless there is some hidden meaning in the language Congress has employed the injured workman or his surviving dependents may choose from the entire territory served by the railroad any place in which to sue, and in which to choose either a federal or state court of which to ask his remedy. There is nothing which requires a plaintiff to whom such a choice is given to exercise it in a self-denying or large-hearted manner. There is nothing to restrain use of that privilege as all choices of tribunal are commonly used by all plaintiffs to get away from judges who are considered to be unsympathetic and to get before those who are considered more favorable; to get away from juries thought to be small-minded in the matter of verdicts and to get to those thought to be generous; to escape courts whose procedures are burdensome to the plaintiff and to seek out courts whose procedures make the going easy."

The entire system of awards under the F.E.L.A. is criticized by Mr. Justice Jackson in his frank analysis: "That such a privilege puts a burden on interstate commerce may well be admitted, but Congress has the power to burden. The Federal Employers' Liability Act itself

leaves interstate commerce under the burden of a medieval system of compensating the injured railroad worker or his survivors. He is not given a remedy, but only a lawsuit. It is well understood in most cases he will be unable to pursue that except by splitting his speculative prospects with a lawyer. The functioning of this backward system dealing with industrial accidents in interstate commerce burdens it with perhaps two dollars of judgment for every dollar that actually reaches those who have been damaged, and it leaves a burden of many injuries to be borne by them utterly uncompensated. Such being the major burden under which the workmen and the industry must function, I see no reason to believe that Congress could not have intended the relatively minor additional burden to interstate commerce from loading the dice a little in favor of the workman in the matter of venue. It seems more probable that Congress intended to give the disadvantaged workman some leverage in the choice of venue than that it intended to leave him in the position where the railroad could force him to try one lawsuit at home to find out whether he would be allowed to try his principal lawsuit elsewhere. This latter would be a frequent result if we upheld the contention made in this case and in the Kepner case. I think, therefore, the petitioner had a right to resort to the Missouri Court under the circumstances of this case for her remedy."

In determining the applicability of the doctrine of *forum non conveniens,* in F.E.L.A. cases the Supreme Court of Utah, in *Mooney* v. *Denver & Rio Grande Railroad Co.* 118 Utah 300, 221 P.2d 625, stressed the employee's need to procure able counsel to compete with the experienced railroad lawyers. In that case an injured employee from Denver, Colorado, sued the defendant railroad in a forum some 500 miles from his home, and from the scene of the accident and the residence of all the witnesses, and the Utah court stated: "The railroads also have a decided advantage in

always having available from the moment of the accident the best possible legal counsel. They are able to constantly retain the services of the most able legal talent, who by constant practice in this field are able to keep up with the rulings and best tactics used in the trial of such cases. Such legal staffs are always able to try their cases well, present their evidence and arguments in their most favorable light and establish the confidence of the courts in their ability, soundness and integrity. Under such circumstances unless there is available to the injured employee equally as capable legal services many just claims will be defeated for lack of effective presentation of such claims. The ordinary general legal practitioner with limited practice in this field and limited facilities for discovering and presenting the facts favorable to the injured employee's case is not equipped to compete with the railroad in a trial of this kind. Unless sufficient of this kind of business is concentrated in one place to keep a law firm sufficiently busy therewith so that it can keep abreast with all of the latest rulings and best devices used in this kind of litigation, and can keep available the necessary experts for consultation and use in discovering, preparing and presenting the facts to the jury, and are able to present clearly and orderly their arguments to the courts, such a trial will be very one-sided and the employee will not have a fair chance to obtain the just compensation for his injury to which he is entitled. I wonder if the desire to avoid trials of these cases in opposition to such highly skilled lawyers as have been available to plaintiff in the past is not a potent reason for this motion. For these reasons I would not depart from our past policy and adopt one of dismissing F.E.L.A. cases under the doctrine of forum non conveniens in the absence of express authority therefor."

Several courts have observed that the problem of transporting witnesses does not present the same difficulty to the defendant railroad as it would to a private person. *Naugh-*

*ton* v. *Pennsylvania Railroad Co.* 85 F. Supp. 761; *Belleair* v. *New York, New Haven & Hartford Railroad Co.* 88 F. Supp. 572.

In the recent case of *Buchanan* v. *New York Central Railroad Co.* 148 F. Supp. 732, decided on February 11, 1957, the court, in denying defendant's motion to transfer stated that in view of available modern transportation facilities the mileage differential is inconclusive, and that it would be unrealistic to infer that defendant's employee witnesses would ignore a request by defendant to testify; hence, little weight could be given to defendant's contention that the witnesses are beyond the reach of subpoena. The court also stressed defendant's failure to aver that all the witnesses were necessary, and that their testimony would not be cumulative.

In *Naughton* v. *Pennsylvania Railroad Co.* 85 F. Supp. 761, the court emphasized that a mere balance of convenience was not sufficient to warrant a transfer. That case involved ten actions under the F.E.L.A., all against the same defendant in the Eastern District of Pennsylvania located in Philadelphia. Motion was made for the transfer of these cases to the Western District of Pennsylvania at Pittsburgh, a distance of approximately 350 miles, under section 1404(a) of the Judicial Code. Defendant claimed they had seven witnesses on the facts and one medical expert all residing in Pittsburgh, and that new counsel would be employed by defendant if the cases remained in the Eastern District where the case load was heavier. Plaintiff had been hospitalized and treated by physicians in Philadelphia.

The court, in refusing the transfer, observed: "Accepting the plaintiff's statement that their medical witnesses are busy doctors practicing in Philadelphia, their transportation to Pittsburgh or Altoona and insuring their presence there as witnesses would present very real difficulties. It is my opinion that whatever inconvenience may result to

the defendant from trying these cases in Philadelphia it is not so great as to allow the court, under the well established limitations of the doctrine of forum non conveniens, to transfer the cases to Pittsburgh; nor do I think the interests of justice imperatively require it if balanced against the importance of allowing the plaintiff's freedom of choice among forums of unquestioned venue. After all, Section 6 of the Federal Employers' Liability Act was designed to give the injured employee a wide choice of forum in which to bring his action. It has not been repealed and the underlying policy remains and should be carried out whenever possible unless serious inconvenience or injustice to the defendant will result."

The court in this case overruled the motion for transfer, stating that it was of the opinion that the defendant at most struck a balance of convenience and had not made a strong enough showing to justify overriding the choice of forum made by the plaintiff pursuant to section 6 of the Federal Employers' Liability Act. It will be noted here again the plaintiff's right to select a forum is emphasized even under section 1404(a).

We have considered all the cases involving the doctrine of *forum non conveniens,* including the following not heretofore mentioned: *United States* v. *National City Lines, Inc.* 337 U.S. 78, 93 L. ed. 1226; *Kilpatrick* v. *Texas & Pacific Railway Co.* 337 U.S. 75, 93 L. ed 1223; *Williams* v. *Green Bay & Western Railroad Co.* 326 U.S. 549, 90 L. ed. 311; *Ford Motor Co.* v. *Ryan,* 182 Fed. 329; *Boyd* v. *Grand Trunk Western Railroad Co.* 338 U.S. 263, 94 L. ed. 55; *Peterson* v. *Ogden Union Railway & Depot Co.* 110 Utah, 573, 175 P.2d 744; *Skultety* v. *Pennsylvania Railroad Co.* 91 F. Supp. 118; *Hohler* v. *Pennsylvania Railroad Co.* 140 F. Supp. 487; *Markantonatos* v. *Maryland Dry Dock Co.* 110 F. Supp. 864; *Cullinan* v. *New York Central Railroad Co.* 83 F. Supp. 870; *Gore* v. *United States Steel Corp.* 348 U.S. 861, 99 L. ed. 678; *St. Louis*

*and Santa Fe Railway Co.* v. *Superior Court of Creek County,* (Okla.) 290 P.2d 118; *Johnson* v. *Chicago, Burlington and Quincy Railroad Co.* 243 Minn. 58, 66 N.W.2d 763; *Testa* v. *Katt,* 330 U.S. 386, 91 L. ed. 967; *Douglas* v. *New York, New Haven & Hartford Railroad Co.* 279 U.S. 377, 73 L. ed. 747; *Norwood* v. *Kirkpatrick,* 349 U.S. 29, 99 L. ed. 789.

A majority of the foregoing authorities pertain to transfer under section 1404(a), and inasmuch as the results are predicated upon varying operative facts, it would serve no useful purpose to discuss each case. However, the predominate rationale of the cases corresponds substantially to the approach of Mr. Justice Jackson in *Gulf Oil Corp.* v. *Gilbert,* 330 U.S. 501, where it is stated at page 508: "But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Also worthy of note here is the concluding statement of Edward J. Barrett, Jr., a lecturer on jurisprudence at the University of California in his article on the subject of *forum non conveniens* in 35 California Law Review 380, at page 422: "The modern rules of venue and jurisdiction have been designed to give a plaintiff every reasonable opportunity to recover for his wrong. He should be denied the right to sue on a transitory cause of action in a court with jurisdiction over the parties only on a clear showing that he is abusing those rules for the purpose of vexing and harrassing the defendant."

Before we undertake to apply the relevant principles of law to the facts appearing in this record, we must point out that the defendant's motion to dismiss filed herein is vulnerable to the same criticism made in the *Buchanan case* namely, it is too general. The names of the witnesses and the nature of the proof proposed to be adduced is not particularized. In the case of *Chicago, Rock Island & Pacific Railway Co.* v. *Hugh Breeding, Inc.* 232 F.2d 584, at page 588, the court had before it a motion to transfer from

the Western District of Oklahoma to the District Court of Kansas at Wichita under section 1404(a). The affidavit in support of the motion stated "that the railroad will be required to have in attendance twenty witnesses who are residents of Kansas; that of these, ten are not employed by the railroad; that to compel them to attend the trial in Oklahoma will be a serious burden to them; and that the railroad cannot force nonemployee witnesses to attend the trial." In denying the motion the court stated: "It is not sufficient to merely state that the railroad has twenty witnesses it must transport to Oklahoma. * * * In the absence of any showing as to materiality of the evidence of these twenty witnesses, merely stating that the railroad is compelled to transport ten of its employees to Oklahoma and that it may not be able to compel the attendance of the ten non employee witnesses is not sufficient for us to conclude that the trial court abused its discretion in refusing to transfer the case to the Kansas Court."

In *General Portland Cement Co.* v. *Perry*, 204 F.2d 316, the Cement Company sought a writ of *mandamus* to direct District Judge Perry to vacate an order denying defendant's motion for a transfer of the cause to the United States District Court for the Northern District of Texas, under section 1404(a). The motion alleged that defendant is licensed to do business and has its principal place of business in Dallas; that there are 19 lay witnesses with personal knowledge of facts material to the issue in the lawsuit, not known by others, whose presence and testimony are essential to the defense of the case; that the testimony of many of the lay witnesses and doctors, and the production of hospital and other medical records can be obtained only by *subpoena;* that the legal process of the District Court in Illinois does not extend to Dallas; that the distance between Chicago, Illinois, and Dallas, Texas, is approximately 986 miles; that the minimum loss of time for each witness would be five days; and that the necessary

expense for the transportation, and loss of time of the witnesses would aggregate many thousands of dollars.

The court, in denying the transfer on the ground that defendant failed to sustain its burden of proof, since it had not given sufficient information as to what the witnesses would testify and how essential their testimony was, stated "that the failure of the defendant to give the names of his witnesses, to indicate what their testimony would be, to show how vital that testimony would be to the defense of the case and to show why the depositions of these witnesses could not be used successfully, furnished a reasonable basis for Judge Perry to find that the defendant failed to sustain its burden of showing that the balance as to the convenience of the witnesses was so strongly favor of the defendant as to overcome the weight to be given to the plaintiff's choice of forum."

As we have heretofore noted, the motion filed by the defendant herein simply stated, "Defendant will present the testimony of eight occurrence witnesses, all of whom live at or near Covington, Kentucky, which is 338 miles by railroad and 346 by highway from East St. Louis. Defendant will present the testimony of three doctors together with hospital records, all of whom live at Covington, Kentucky, or Cincinnati, Ohio." The defendant's motion to dismiss on the basis of *forum non conveniens* was clearly insufficient.

Apart from the insufficiency of the averments in determining whether defendant's motion should have been allowed, we shall examine the entire record and apply the stringent test of Mr. Justice Frankfurter in his dissent in the *Pope case, i.e.,* whether the choice of forum was purely vexatious, or whether there is a relevant connection between the litigation and forum chosen.

What prompted the plaintiff in this case to go to East St. Louis to file his lawsuit? What relevance is there between plaintiff's litigation and the forum that he selected?

The plaintiff in this case employed an attorney of East St. Louis, Illinois, who is a regional counsel for the Railroad Brotherhood. It is evident that this attorney is a lawyer of considerable experience in this field of practice. The defendant on September 14, 1956, filed an affidavit of its general counsel in Illinois, in further support of its post-trial motion for the dismissal of this action upon the doctrine of *forum non conveniens*. This document stated that plaintiff's counsel had filed, during the current year, fifteen other cases in the circuit court of St. Clair County or the city court of East St. Louis, all predicated upon F.E.L.A. except one which was a railroad-crossing-accident case. Three of these cases reached verdicts in the sums of $50,000, $41,000, and $75,000. Eight of them were settled and four are still pending. This document was filed for the purpose of sustaining defendant's argument that the taxpayers of St. Clair County are being unnecessarily burdened with the expense of foreign-born litigation. Let us examine defendant's solicitude for the taxpayers of St. Clair County. A reasonable estimate would suggest that it cost $250 in jury fees to try the case at bar. A fair calculation would indicate that at least $20,000 in fees were paid or will be paid counsel for plaintiff, lawyers for the defendant, and the expert medical witnesses, from the $75,000 judgment entered in this case. So while the public is paying $250, there are taxpaying professional members of that same public who are receiving $20,000. It has been estimated in Cook County that filing fees paid by nonresident litigants in F.E.L.A. cases more than offset the cost of jurors for the trial of those cases. It would appear that the economy of St. Clair County is not impaired by the activities of the Railroad Brotherhood in recommending to their injured brothers that they go to East St. Louis for their day in court.

One of the first major responsibilities of the regional counsel is to ascertain the nature and extent of his client's

injuries. Across the river is St. Louis, Missouri, a well-known medical center in which is located several of the finest medical schools in the United States. As defendant indicates in its brief, the medical testimony is frequently the paramount issue in F.E.L.A. cases.

We are sure the railroad's concern for the trial calendars cannot be very sincere. Delays are always a sharp weapon for the defense. Postponement of an injured employee's day in court for five years is most frustrating. Defendants can afford to wait. Plaintiffs can ill-afford to do so. Very often they are disabled and cannot work, so they and their families must endure this long period of waiting, dependent upon the benevolences and mercy of someone. Settlements thus become imperative and frequently are inadequate.

It is not contended that there is a backlog of cases in either the circuit court of St. Clair County or the city court of East St. Louis. This plaintiff obtained a trial within six months. The defendant occasioned some delay because of the time consumed by the trial court in his consideration of the motion to dismiss. A short continuance was granted defendant because an associate counsel was engaged elsewhere. Plaintiff argues that this delay was completely unnecessary, for the same associate counsel on the trial participated only to the extent of questioning four jurors on their *voir dire*. Although it is germane to the issue, there is no proof as to the condition of the courts' docket in Covington, Kentucky, or nearby Cincinnati, Ohio, where, as urged by the defendant, plaintiff could more conveniently have filed his lawsuit. It is contended by appellant here that this court can take judicial notice of the condition of the dockets of the circuit and superior courts of Cook County, citing *Secco* v. *Chicago Transit Authority*, 2 Ill. App. 2d 239. Likewise it has been our privilege to explore the situation there to determine the impact of nonresident F.E.L.A. litigation on the backlog in those courts. It is our opinion

that the time spent on those cases is insignificant. The serious congestion problem in Cook County is not appreciably affected by the importation of F.E.L.A. cases. We are of the opinion that the trial court was not in error in concluding that the plaintiff did not commence his suit in East St. Louis for the purpose of inconveniencing or harrassing the defendant, but for his own advantage. A desire to vex or oppress cannot reasonably be inferred from the facts in this record. We do not find here an unneccessary hardship and inconvenience cast upon the railroad without a compensatingly fair convenience to the plaintiff.

Counsel argues here that they did not receive a fair trial in East St. Louis because their witnesses were 350 miles away, not subject to process, so they were forced to use their depositions, which was ineffective and unsatisfactory. Quoting from the railroad's brief "Instead of defendant having eight witnesses as to the factual occurrences it had to content itself with the production of but one and was disappointed in not even getting a deposition of the other two. The trial of this case at East St. Louis, hundreds of miles from the occurrence out of which the litigation arose deprived defendant of its right to compulsory process compelling the attendance of witnesses."

Walter E. Mastin, Ruby Straub and Joseph Tierney testified by deposition that they are employees of the Louisville and Nashville Railroad, and that they knew nothing about the actual occurrence of plaintiff being injured. Walter Mastin, who inspected the caboose, testified: "I, myself, did not see Mr. Cotton at the time he says he was hurt, and the manner as to how he was hurt, I know nothing of my own knowledge." He did, however, testify that he made an inspection of the cars in question and that he found the alleged defective brakes in good repair. The other two witnesses Straub and Tierney stated that they did not make an examination of the caboose involved, and that they did not have knowledge as to how the accident

happened. Defendant's exhibit number one which is a report of occurrence made within a very short time after the accident indicates that there are no persons listed as witnesses. The plaintiff produced his foreman, Howard L. McManamas, who was the closest man to him at the time of the accident.

The record shows that Dr. Robert Salsbery was a physician specializing in orthopedic surgery living near Covington, Kentucky. He examined plaintiff when he was injured in February, 1955, and again in August, 1955. He took X rays on both occasions. He was the treating physician. The defendant does not name the doctors who had to remain at home and what their testimony would be. Dr. Reichert is a company doctor, and, after a superficial examination, he referred the case to Dr. Salsbery. In this case there was no dispute as to the nature and extent of plaintiff's injuries. Dr. Salsbery and plaintiff's doctor agreed that there was a ruptured intervertebral disc. They agreed that the injury was painful; that it was permanent; that it was disabling; that an operation might or might not result in improvement and that it is necessary to wear a brace. Plaintiff's complete medical history was presented to the jury by the doctors on each side. There was no area of disagreement. There was some intimation that plaintiff suffered a herniated disc when he was treated in February, 1955, but Dr. Salsbery admitted on cross-examination that the X rays taken at that time failed to reveal such pathology and that plaintiff's work record, subsequently, contradicted any possibility of a herniated disc, and he further admitted that the suspected disc of February was in an altogether different section of the spine. The defendant made no contention on the trial that plaintiff's suspected condition of ill-being as of February, 1955, was in any way related to the events of August 20, 1955.

This further allegation is found in defendant's affidavit in support of their motion to dismiss: "In order to try this

cause at East St. Louis defendant will incur expenses in excess of those which would be incurred if the case were tried at Covington, Kentucky, or Cincinnati, Ohio, which extra expenses will exceed $2,000."

The first day of the trial in East St. Louis was consumed in selecting the jury and the introduction of plaintiff's case. The defendant's lone witness, Dr. Salsbery, flew into St. Louis from Covington, Kentucky, testified, and flew back home on the same day. This entailed a cost of much less than $100. We do not believe that the defendant was harrassed by the plaintiff in the selection of his forum. If the railroad was inconvenienced it was more than counterbalanced by the advantages afforded the injured employee. The defendant is a railroad corporation licensed to do business in the State of Illinois, has a large yard in the city of East St. Louis and has many miles of track in the State of Illinois. Harold Baltz, counsel in this case, is the general attorney for the Louisville and Nashville Railroad Company in Illinois and tries all cases for that company in Illinois. If this case had never reached trial, the extravagant claims of imposition made by the railroad would never have been exposed. The defendant did not have eight occurrence witnesses. They had none. There were a few of their employees who examined the brakes on the cars involved. They chose to present their testimony by deposition. The claim that they could not persuade their men in their employ to come to East St. Louis to testify personally shocks one's credulity. (*Buchanan* v. *New York Central Railroad Co*. 148 F. Supp. 732.) The same observation applies to their doctors who did not appear. It would not have been necessary for their witnesses to remain away from home four or five days. Dr. Salsbery flew in and back the same day. The trial did not entail an additional cost of $2,000, but less than $100. Since there was virtually no dispute as to the medical issues it was not necessary for the railroad to discommode the medical staff of

the hospital in Covington, Kentucky, nor their doctors whose depositions they did not elect to use. Such would have been merely cumulative on issues not in dispute. In view of the foregoing we are prompted to suggest that the railroads prepare their motions and affidavits in these cases more carefully, improve upon their accuracy in advancing the facts and figures upon which they rely. If the companies are actually harassed and the plaintiff is prompted by vexation in the choice of a forum, there should be relief, and the courts will grant such relief if the request is candidly and convincingly presented. In other words, section 6 of the Federal Employers' Liability Act gives this plaintiff a right which cannot be overcome by a mere balance of conveniences; that only where it is shown that plaintiff is motivated purely by vexation and harrassment will an F.E.L.A. case be dismissed. If it is "shopping" for a plaintiff to bring suit in a great metropolis where a large verdict is anticipated, why is it not also "shopping" for a defendant to attempt to have the case dismissed on the ground that it should have been brought in a small community where the defendant anticipates a smaller verdict would result. This is in accord with the reasoning of Judge Hand in his concurring opinion in *Ford Motor Co.* v. *Ryan,* 182 F.2d 329, (an anti-trust suit under Title 15 of the U.S. Code, which law contains a venue provision comparable to section 6 of the F.E.L.A.), where he said (p. 332) : "I wish to put my vote solely upon the ground that § 15 of Title 15 gives to plaintiff a privilege which a defendant must overcome by more than a bare balance of convenience between the two forums."

In 1905, in the Court of Appeals, Kings Bench Division, in the case of *Logan* v. *Bank of Scotland,* the court said: "The English courts are freely open to persons foreign to this country seeking to enforce their rights against our corporations, companies and citizens, in cases in which the courts can properly exercise jurisdiction, but while I

think we ought to be careful not to check this freedom, I am of the opinion that we ought not to allow this hospitality to be abused." This pretty well represents our thinking on this subject. It is our considered opinion that the city judge of East St. Louis did not err in denying defendant's motion to dismiss this case on the theory of *forum non conveniens* and that the judgment entered herein should be affirmed.

*Judgment affirmed.*

Mr. JUSTICE SCHAEFER, dissenting.

The majority opinion has at last buried the myth that the doctrine of *forum non conveniens* cannot be applied to F.E.L.A. cases. To that extent I agree with it. (Cf. *People ex rel. Atchison, Topeka and Santa Fe Railway Co. v. Clark,* 12 Ill.2d 515, 527ff.) But the opinion goes further and lays down a special rule to govern the application of the doctrine to F.E.L.A. cases. Moreover, it fails, in my opinion, to appraise correctly the factors that should govern this case. And for these reasons I dissent.

This case arose out of an accident that happened in Covington, Kentucky, about 350 miles from East St. Louis, Illinois, where the plaintiff brought his action. The defendant does business in Illinois. The plaintiff was referred by his lawyer to some doctors who practice in Illinois and they examined him and testified in his behalf. No other circumstance connects this case with Illinois.

I assume that the plaintiff selected the distant forum that he chose because he thought that he could get a higher verdict there than he could at home. Obviously it was otherwise less convenient and more expensive for him. It is not suggested that there are no lawyers in Covington or across the river in Cincinnati who are competent to try his case, nor does the record suggest that there is a lack of competent doctors in those communities. It is better, I think, to pass without comment the inference that the economic well being of the plaintiff's lawyer and the doctors

that his lawyer hired to examine him and to testify for him is a relevant consideration.

Under our adversary system of litigation it can be assumed that both litigants want a favorable forum. Those desires cancel out, and there is left for a court to consider, first the relative capacities of the two forums to furnish the essentials of a fair trial, such as the power to compel the attendance of witnesses and the production of documents and to afford the jury an opportunity to view the scene if that is appropriate, and second, the relative convenience of the witnesses and the parties. What is needed for decision is an unprejudiced appraisal of the competing claims of the two forums. I do not find that kind of an appraisal in the majority opinion.

As the opinion points out, there was no dispute about the fact that Cotton had a herniated disc at the time of the trial. What the jury had to determine was the extent to which that condition was related to the events of August 20, 1955. Cotton had suffered an earlier back injury which was not connected with his employment. He was hospitalized from December 31, 1954, to January 5, 1955, because of that injury, and he was away from his work for 26 days. His own doctor, a Dr. Golder, referred him to a Dr. Cofield and to Dr. Salsbery, the same orthopedic specialist who testified in this case. Neither Dr. Golder nor Dr. Cofield testified. Dr. Salsbery testified that it was his opinion, when he examined the plaintiff in February of 1955, that in all probability he then had a herniated disc between two vertebrae higher in the back than those involved in the August injury.

Upon the evidence that was made available to it the jury has resolved the dispute as to the bearing of the two injuries upon the plaintiff's condition. I agree with the majority that the defendant's motion should have stated with more particularity what testimony was expected from the nonresident witnesses, even though, for tactical reasons,

it may have been reluctant to do so. But I would have more confidence in the verdict if the trial had been held where all of the doctors who actually treated the plaintiff for his earlier injury were subject to *subpoena* or could have testified without unreasonable interference with their professional responsibilities.

The opinion disregards entirely the interests of those who were drawn by chance into the dispute. Any trial necessarily disrupts the lives of others than the immediate parties to the suit. Some disruption of that kind is unavoidable, because the administration of justice can not wait upon the convenience of witnesses and jurors. But the law has long been concerned to hold to a minimum the inconvenience that it causes. That factor should not be disregarded, as it is in this case.

Illinois courts have jurisdiction over the defendant in this case because it is "doing business" here. The notion that a corporation could exist only in the State of its incorporation made necessary the development of the jurisdictional concept that a foreign corporation consents to the exercise of jurisdiction over it by "doing business" in the forum State. That concept, however, is of diminishing significance today. It has yielded to realistic considerations of the fairness of permitting the foreign corporation or the nonresident individual to be sued in the forum State. (*International Shoe Co.* v. *Washington*, 326 U.S. 310, 90 L. ed. 95; *Nelson* v. *Miller*, 11 Ill.2d 378.) Under this new approach to problems of jurisdiction the doctrine of *forum non conveniens* will assume increased importance, and its flavor of procedural due process, already strong, will be enhanced. 326 U.S. at 317; 11 Ill.2d at 391.

While the opinion properly rejects the argument that section 6 of the Federal Employers' Liability Act compels State courts "to entertain all F.E.L.A. cases, despite their origin in remote areas," it seems nevertheless somehow to derive from that section a special rule to govern the applica-

tion of *forum non conveniens* to those cases. I find nothing in section 6 or elsewhere that justifies the creation of a separate standard for this particular class of cases, and the opinion advances no reason for the arbitrary creation of a special category. In my opinion these cases should be governed by the same standards that apply to others.

Because the opinion refers to an anonymous estimate of the relationship between the filing fees paid in Cook County by nonresident litigants in F.E.L.A. cases and the amount of fees paid to jurors in those cases, it is appropriate to mention the only relevant statistics that exist. A reputable member of the bar studied all of the cases that were tried to juries in the circuit court of Cook County during the period from September 12, 1955, to November 18, 1955. The result of that study is of record in this court. More than seventeen per cent of all of the time spent by juries during that period was spent on cases brought against railroads to recover for personal injuries that occurred outside the State of Illinois. Not all of the cases were F.E.L.A. cases, and some of them might have survived a proper application of *forum non conveniens.* Even so, this tabulation, the accuracy of which has not been challenged, impressively demonstrates the substantial burden that these cases represent.

Mr. CHIEF JUSTICE DAVIS concurs in this dissent.