## Chesapeake & Ohio Railway Company et al. v. McCoy's Administratrix.

(Decided February 8, 1929.)

BROWNING & REED for appellants.

WAUGH & HOWERTON for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

Just before 6 p. m. on Wednesday, November 24, 1926, Frank McCoy, while attempting to drive an automobile over the railway tracks of the Chesapeake & Ohio Railway Company, at the Fortieth street crossing near the eastern limits of the city of Ashland, was struck and instantly killed by an east-bound passenger train. This suit was instituted by the administratrix of his estate against the Chesapeake & Ohio Railway Company, a Virginia corporation, and Jesse Ellis, its fireman, and from a judgment entered upon a verdict for $20,000 returned by nine of the jury, these defendants have appealed, and have ably presented two questions for our determination.

## QUESTION OF REMOVAL.

The petition in this case is rather lengthy, but we believe this is a fair statement of its contents:

(a) In the first literary paragraph of her petition the plaintiff charges that the railroad company, its engineer, and Jesse Ellis, its fireman, so carelessly, negligently, violently, and recklessly operated its train as to cause it to run over and kill the deceased, and that paragraph concludes thus: "Which injuries and death were the direct and proximate result of the carelessness and negligence of the defendants as herein alleged."

(b) In the next literary paragraph she pleads failure of the engineer to give signals, and closes that paragraph thus: "Which negligence on its part and their part contributed to, brought about and caused the said injuries and death."

(c) Then follows a paragraph complaining of excessive speed, without any particular conclusion. Then follows a paragraph complaining of failure of Ellis, the fireman, to ring the engine bell, which paragraph concludes thus: "Which negligence upon his part and on the part of the defendant, the C. & O. Ry. Co., contributed to, brought about and caused the injuries and death of the deceased."

(d) In the next paragraph she pleads failure of fireman and engineer to keep a lookout, and that paragraph concludes thus: "The defendants each and all, were guilty of negligence which contributed to, brought about and caused the injuries and death of the deceased."

(e) Then follows a long paragraph in which she pleads in detail that this crossing was particularly dangerous and that no watchman, gates, or other means were used or provided by the defendant Chesapeake & Ohio Railway Company, and that paragraph concludes thus: "And by reason of such negligence and failure thereby contributed to, brought about and caused the injury and death of the deceased." Then follows this general allegation: "The plaintiff states that as a direct and proximate result of the acts of carelessness and negligence of the defendants herein alleged, the deceased lost his life."

In due season the Chesapeake & Ohio Railway Company, by proper steps, sought to remove this case to the federal court for the Eastern district of Kentucky. The trial court overruled its motion to remove and it excepted. It will be observed that allegations (a), (b), (c), and (d) above related entirely to the operation of this train, and of course, under the doctrine of respondeat superior, the railway company is jointly responsible with its engineer and fireman for their negligence in these particulars. Paragraph (e) relates entirely to the maintenance of this crossing, concerning which there is no allegation that either the engineer or fireman had anything to do or were negligent in any particular. This was, so the railway company contends, a separable controversy, as to it, on account of which it was entitled to have this case removed.

In Gudger v. W. N. C. R. Co. (C. C.) 21 F. 81, we find this, the italics being used in the opinion itself: "The word 'controversy' is employed in the statute, and a *separate controversy* is not identical in signification with a *separable cause of action.* There may be separate remedies against several parties for the same cause of action, but there is only one subject-matter of controversy involved. Where there are separate and distinct causes of action in the same suit, either of which might have been sued on alone, then there are separate controversies within the meaning of the statute."

A suit may, under correct pleading, embrace several controversies, one of which may be between the plaintiff and that defendant who is a citizen of a state other than the state in which the suit is brought, and in such a case, although the citizen of another state under the particular mode of pleading adopted by the plaintiff is made a co-

defendant with one whose citizenship is the same as the plaintiff's, he should not, as to his separable controversy, be required to remain in the state court and surrender his constitutional right to invoke the jurisdiction of the federal court. 23 R. C. L. 672. Where a plaintiff prosecutes a suit as upon a joint cause of action, the action as stated by him is the test of removal, and if that is joint in character, no separable controversy is presented with a non-resident defendant joined with the citizen of the state. 23 R. C. L. 677. Where, under the local law, the case stated in the plaintiff's pleading is one of joint liability on the part of the defendants, this is decisive of the nature of the controversy. 23 R. C. L. 678.

In Trivette v. C. & O. R. Co. (C. C. A.) 212 F. 641, the negligence alleged consisted in: (A) Failure of the railroad company to provide a proper approach for the public to the depot and platform, and (B) negligence on the part of the railroad company and the engineer in operating the train too fast. There was no allegation that these two acts of negligence concurred to produce the injury. The court held the cause was removable, saying in the opinion that it is well settled in Kentucky that, if several acts of negligence are alleged, recovery can be had if any one of them is proven. The railway company places great reliance upon this Trivette case, but in that case there was no allegation that the two acts of negligence concurred to produce the injury. From what we have taken above from the plaintiff's petition, we are persuaded that it is sufficiently alleged in this case that the death of McCoy resulted from the joint and concurrent acts of negligence of both these defendants. We are persuaded that the general allegations contained in the plaintiff's petition here cannot be distinguished from the general allegation contained in Hay v. May Department Stores Co., 271 U. S. 318, 46 S. Ct. 498, 70 L. Ed. 965, in which the allegation was: "That the negligence of both defendants as aforesaid concurred and jointly co-operated to cause, and did directly and proximately cause, the aforesaid collision." Nor can we distinguish it from the Sheegog case, the various reports of which are: 215 U. S. 308, 30 S. Ct. 101, 54 L. Ed. 208; 126 Ky. 252, 103 S. W. 323; (C. C.) 177 F. 756; 217 U. S. 599, 30 S. Ct. 696, 54 L. Ed. 897. In that case the charge was that the conductor, Durbin, by his negligence in running, etc., and the Illinois Central Railroad Company, by its negligence in permitting its engines, cars, and road to be operated

while in a dangerous condition, altogether jointly caused said wreck and killed Sheegog. Of course, the word "joint" or "jointly" is not used in this general allegation, but the plaintiff expresses the same idea in different words; hence we have concluded the court did not err when it overruled the motion to remove.

## THE INSTRUCTIONS.

The railway company complains of instruction No. 1, which is:

"The court instructs the jury that it was the duty of defendant's engineer, C. A. Leake, in charge of the train which struck the automobile in which the deceased, Frank McCoy, was riding at the time and place mentioned in the petition, to operate its train at a reasonable rate of speed and to have said train under reasonable control when it approached the crossing at Chestnut Street, in Ashland, Kentucky, and it was his duty to give reasonable and timely warning of the approach of said train to said crossing by sounding the engine whistle or ringing the engine bell on said engine; and it was further the duty of the defendant's engineer, C. A. Leake, and its fireman, the defendant, Jesse Ellis, to keep a reasonable lookout ahead for persons who were using the said crossing, *and it was the duty of the employees of the Chesapeake and Ohio Railway Company in charge of said train to exercise ordinary care to prevent injury to persons using or attempting to use the said crossing.* (Italics ours.)

"And if the jury shall believe from the evidence that the employes negligently failed to perform any one or more of these duties, and by reason thereof and as a direct and proximate result of such failure, if any there was, the said Frank McCoy was struck by said train and killed, then the law is for the plaintiff and the jury should so find, unless you should also find and believe from the evidence as indicated in Instructions No. 'B' and 'C,' in which event you should find for the defendants as directed in said instruction."

The railway company makes serious criticism of the italicized words in this instruction, and contends that these italicized words cannot be distinguished from these

words which we condemned in L. & N. R. Co. v. Thompson's Adm'r, 217 Ky. 21, 288 S. W. 761:

> "And it was *also* the duty of the employees of the defendant company in charge of said train to use such *other means* to prevent injury to travelers at said crossing as reasonably prudent persons would, in the exercise of ordinary care, use in the operation of said trains at the time and place and under the conditions similar to those shown in this case."

However, a comparison of the criticized portion of the instruction before us with the instruction criticized in the Thompson case makes the difference between them quite apparent. The instruction complained of in this case did not require the employes operating the train of the railway company to use any *other* means to prevent injury than those previously set out therein, as was required in the Thompson case. It merely said that it was the duty of the employes of the railway company in charge of the train to exercise ordinary care to prevent injury to persons using the crossing. There is quite a difference in the duty of merely exercising ordinary care to prevent injury, and in requiring the employes in charge of the train of the railway company to use *other means* to prevent injury. The words "other means" can have no other meaning than some additional or affirmative method, apparatus, conduct, or action to prevent an injury. For these reasons the Thompson case is clearly distinguishable from the case at bar. In the Thompson case, duties additional to those pleaded and specifically enumerated in the instruction were emphatically put upon the railway company by the instruction given, while in the case before us no such additional duties were imposed. The question before us seems to have been settled in the case of L. & N. R. Co. v. Roth, 130 Ky. 759, 114 S. W. 264. In that case, we approved instruction No. 2, and we are copying it here and have italicized those portions thereof which it seems to us are indistinguishable from the criticized portions of the instruction before us: "(2) It was the duty of the defendant, the Louisville & Nashville Railway Company, in the operation of its train at the time and place mentioned in the proof, to give such notice of the approach of its train to the crossing, to run its said train at such speed, to keep such lookout, *and to use such care to avoid injury to persons thereon, as might*

*usually be expected of ordinarily prudent persons operating a railroad under like circumstances.''*

We have concluded that there was no substantial error in instruction No. 1 as given.

The judgment is affirmed.

The whole court sitting.