2 Ill. App.3d 906 (1971)
274 N.E.2d 507
LEVA ADKINS, Plaintiff-Appellee,
v.
CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY et al., Defendants-Appellants.
No. 69-135.
Illinois Appellate Court  Third District.
October 5, 1971.
Rehearing denied November 15, 1971.
*907 *908 *909 *910 B.A. Webster, of Des Moines, Iowa, William M. Walker, of Rock Island, and Eugene R. Johnson, of Peoria, for appellants.
Harry M. Philo, of Detroit, Michigan, Verne Lawyer, of Des Moines, Iowa, and Frank G. Schubert, of Rock Island, for appellee.
Affirmed upon remittitur, otherwise reversed and remanded.
Mr. JUSTICE SCOTT delivered the opinion of the court:

MODIFIED OPINION
This is an appeal from a judgment of the circuit court of Rock Island County, Illinois.
The plaintiff in this litigation is a resident of the State of Michigan. The defendant railroad is a Delaware corporation doing business in Iowa and Illinois. The individual defendants, Throckmorton and Loftus, are officers of the railroad and are residents respectively of Cook and Will Counties, Illinois.
The plaintiff brought action to recover damages for the death of her deceased husband which resulted from a grade crossing collision between defendant's train and a truck driven by the decedent, Everett Adkins. The collision occurred at Booneville in the state of Iowa on October 6, 1966.
This suit was first filed on October 18, 1966, in the U.S. District Court for the Southern District of Iowa, Central Division, at Des Moines, Iowa. As originally filed the railroad was the sole defendant. On September 8, 1967, a pre-trial conference was held, at which time the defendant railroad's Motion in Limine was considered and granted. The cause was then set for trial on December 5, 1967, however, prior to this time the plaintiff moved to dismiss the action. On January 16, 1968, the case was re-filed in the circuit court of Rock Island County, Illinois, and again the sole defendant was the railroad. On March 15, 1968, the defendant railroad filed a motion to dismiss the action on the grounds of forum non conveniens. Thereafter on April 29, 1968, the plaintiff filed a motion to amend the complaint by adding individual defendants, namely, W.B. Throckmorton and R.V. Loftus, agents and employees of the railroad. On August 16, 1969, the plaintiff's motion to amend was allowed and the defendant railroad's motion to dismiss on the grounds of forum non conveniens was denied.
The errors assigned on this appeal are as follows: (a) the trial court *911 erred in not sustaining the motion to dismiss on the grounds of forum non conveniens, (b) that the court erred in failing to dismiss the individual defendants from the case, (c) that plaintiff's decedent was guilty of contributory negligence, (d) that the trial court ruled incorrectly on certain objections to evidence, (e) that the trial court erred in instructing the jury, (f) that the verdict was excessive and should be set aside, and (g) that the trial court erred in denying certain motions. To adequately consider these claimed errors we will in turn state them with greater specificity and supply additional factual information where the same is relevant.
 1, 2 Directing our attention to the alleged error of the trial court's ruling on the motion to dismiss the action on the grounds of forum non conveniens, we wish to note our awareness of the fact that our Supreme Court has approved the application of the doctrine in certain instances. (Whitney v. Madden, 400 Ill. 185, 79 N.E. 2d 593; Cotton v. Louisville & Nashville Railroad Company, 14 Ill.2d 144, 152 N.E.2d 385.) The doctrine is an equitable one and has been described as "the discretionary power of a court to decline to exercise a possessed jurisdiction whenever it appears that the cause before it may be more appropriately tried elsewhere." See "The Doctrine of Forum Non Conveniens in Illinois," University of Illinois Law Forum, 1964, p. 646.
 3 We are cognizant of the general rule that application of a doctrine lies primarily within the discretion of a trial court and that the motion should be allowed if a choice of forum is purely vexatious, but should be denied when there is a relevant connection between the litigation and the forum chosen (Cotton v. Louisville & Nashville Railroad Company, supra); also, we are aware of the excellent judicial discussion of the doctrine by Mr. Justice Jackson in the Case of Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055. It was in this case that Mr. Justice Jackson discussed certain factors which may persuade the trial court to dismiss an action, e.g., relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling witnesses, cost of obtaining attendance of willing witnesses, possibility of view of premises, court calendar congestion, the burdens of jury duty upon people of a community which has no relation to the litigation and the appropriateness of having a forum that is at home with the state law that must govern the case.
Mr. Justice Schaefer in his dissent in the Cotton case says that the court should consider "first, the relative capacity of the two forums to furnish the essentials of a fair trial, such as the power to compel the attendance of witnesses and the production of documents and to afford the jury an *912 opportunity to view the scene if that is appropriate, and second, the relative convenience of the witnesses and the parties." Cotton v. Louisville & Nashville Railroad Company, supra.
 4 Before we examine the instant case in the light of guidelines set forth by Mr. Justices Jackson and Schaefer, we must note that both of these eminent jurists recognized that it is elementary that the doctrine of forum non conveniens presupposes at least two forums in which the defendant is amenable to process. Gulf Oil Corp. v. Gilbert, supra; Cotton v. Louisville & Nashville Railroad Company, supra.
 5 After an examination of the record in the case now before us on appeal we can only conclude that prior to verdict there was never available a choice of forum, since Illinois was the only state in which all three defendants could be sued. At no time did the individual defendants Throckmorton and Loftus consent or in any way indicate that they would consent to be sued in any state other than Illinois, their state of citizenship and residence. It is significant that the defendants Throckmorton and Loftus never raised the issue of forum non conveniens at any time prior to verdict. In fact, there was never any claim, affidavit or motion prior to trial in which the individual defendants Throckmorton and Loftus contended that the complaint against them should be dismissed or that the pending action should be heard by a forum other than the circuit court of Rock Island County.
The exercise of discretion by a trial court cannot be abused when in fact the court was not vested with the power or right of discretion. In the case before us the trial court did not have presented to it a second forum which would be available to all defendants so we fail to see any error in the court's refusal to grant the motion for dismissal based upon the doctrine of forum non conveniens.
In determining that the doctrine of forum non conveniens was inapplicable in the case before us we must necessarily presuppose that the individual defendants Throckmorton and Loftus were proper parties to the litigation. We do presuppose since we believe that the law is settled as applied to the facts in the case before us that Throckmorton and Loftus were indeed proper parties to the suit.
The defendant argues that agents such as Throckmorton and Loftus can be liable to third parties for wrongful acts of misfeasance committed by them, but that as such agents they are not personally liable to a third party for mere nonfeasance, or in other words where they failed to perform some duty owed to an injured party. In support of this contention the defendants cite the case of Wendland v. Berg, 188 Ia. 202, 174 N.W. 410. We do not believe that the law is as clear cut in regard to the misfeasance and nonfeasance distinctions as the defendants claim it is. *913 In fact in our present society liability or lack of liability to third parties based upon the misfeasance or nonfeasance test has become such a murky field that the old test itself has become obliterated and useless. We believe that this conclusion is sustained when we review the history of Judge Story's rule, which for many years was the settled law regarding an agent's liability to third parties.
"Judge Story, in his work on the Law of Agency, published in 1839, founded the following statement on what he terms Lord Holt's celebrated judgment in Lane v. Cotton: `The agent is also personally liable to third persons for his own misfeasances and positive wrongs. But he is not, in general (for there are exceptions), liable to third persons for his own nonfeasances or omissions of duty, in the course of his employment. His liability, in these latter cases, is solely to his principal, there being no privity between him and such third persons, but the privity exists only between him and his principal. And hence the general maxim as to all such negligences and omissions of duty is, in cases of private agency, "respondeat superior."

`The distinction, thus propounded, between misfeasance and nonfeasance, between acts of direct, positive wrong, and mere neglects by agents, as to their personal liability therefor, may seem nice and artificial, and partakes, perhaps, not a little of the subtlety and overrefinement of the old doctrines of the common law. It seems, however, to be founded upon this ground: that no authority whatsoever from a superior can furnish to any party a just defense for his own positive torts or trespasses, for no man can authorize another to do a positive wrong. But in respect to nonfeasances or mere neglects in the performance of duty, the responsibility therefor must arise from some express or implied obligation between particular parties standing in privity of law or contract with each other, and no man is bound to answer for any such violations of duty or obligation, except those to whom he has become directly bound or amenable for his conduct.' Story, Agency, 9th Ed. § 309.
In making this statement, Judge Story seems to have overlooked the obligations which are imposed upon all living in a civilized community, in favor of their neighbors. Because of this obligation the law and public policy impose certain duties upon persons who have contracted with a master to do a certain thing which makes them liable to third persons for its nonperformance. Most acts of negligence are, in final analysis, acts of nonfeasance, but the books are full of cases in which servants and agents have been held liable for negligence. While, therefore, many cases have attempted to maintain the formula laid down by Judge Story, they have, in practice, either distinguished it so that little *914 is left of it, or departed from it altogether." 20 A.L.R. 97, p. 103-104.
 6 Today the courts are agreed that an agent is liable to a third person for damages resulting from violation of a duty which such agent owes to the third person and it matters not whether that violation be one of malfeasance, misfeasance or nonfeasance, but whether such a duty exists under any particular set of circumstances, a difference of opinion prevails in various jurisdictions, due largely to a disagreement as to the exact meaning of the use of the terms "malfeasance", "misfeasance" and "nonfeasance" and their application to the questions before the court.
In most jurisdictions the courts are apparently in accord in holding the servant of a railroad company jointly liable with his master for injuries resulting from a crossing accident which occurs as the result of the failure of the servant to sound a warning as the train approaches the crossing, (Judd v. Oregon Short Line R. Co., 4 F. Supp. 657; Strom v. Payne, 119 S.C. 51, 111 S.E. 798; Chesapeake & Ohio Railway Co. v. McCoy, 228 Ky. 752, 16 S.W.2d 170), or the failure of a railroad employee with a lighted lantern in his hand on a dark night at a crossing to warn of an approaching train, persons in an automobile which he knows to be also approaching, since this duty is not solely a duty to his master but is clearly a duty to the public as well. Burrichter v. Chicago M. & St. P.R. Co., 10 F.2d 165.
 7 The defendants state that it is the law in Iowa as elsewhere that a corporate officer is not liable to a third person for failure to perform a duty owed solely to the corporation and not to the public generally. Is not then the pivotal question whether defendant Throckmorton, the chief engineer, and defendant Loftus, the engineer of public works of the defendant railroad, did or did not owe a duty to the public as well as to their employer? We believe that this is the crux of the question as to whether Throckmorton and Loftus were proper parties to the action. We further believe that the law of Iowa is clear on this point and they were proper defendants. The Iowa Supreme Court has said:
"Liability is predicated on duty. If the agent is put in control of the situation with the express or implied consent of the principal or is given or exercises such powers within his authority that an independent actor would have, it is quite generally held that he owes a duty to third persons to use due care in what he does, the same as any other individual. Such a control of property imposes upon him a duty not altogether and simply as agent, but as a custodian and controller of such property for the purposes in hand. The fact that he also owes a special duty to his principal is not material.
It may be conceded he owes such a duty and his failure to perform properly may be considered as nonfeasance to his principal, but it is *915 misfeasance to a third person injured thereby. Briefly stated, the negligence of the agent converts what otherwise would have been a proper performance of his duties into misfeasance." Emery v. American Refrigerator Transit Co., 194 Ia. 926, 189 N.W. 824.
Therefore, according to our analysis of the law the trial court did not err in overruling the motion for directed verdict made by defendants Throckmorton and Loftus.
 8, 9 The defendants claim that the plaintiff's decedent was guilty of contributory negligence as a matter of law and that the trial court erred in not sustaining defendants' motion for directed verdict and their motion for judgment notwithstanding the same. Both the plaintiff and the defendants cite the case of Pedrick v. Peoria and Eastern Railroad Company, 37 Ill.2d 494, 229 N.E.2d 504, as setting forth the substantive law regarding the granting or denying of such motions. The Pedrick case not only is the recognized law in Illinois but also reflects the law followed in Iowa. It was in this case that our Illinois Supreme Court stated:
"Verdicts ought to be directed and judgments non obstante veredicto entered only in those cases in which all of the evidence when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."
In the case before us the decedent Adkins was a 37 year old professional truck driver. He was at least somewhat familiar with the crossing in question since he had stayed at a motel located across the track on at least four previous occasions. He was driving a trailer rig of some 50 feet in length having total weight of twenty-two or twenty-three thousand pounds. Approaching the Booneville crossing from the east on Highway No. 6 the railroad tracks parallel the highway for between three and five miles. In this stretch before the crossing the land is flat. The railroad tracks and the highway run 110 feet apart at the Booneville turnoff and the tracks are slightly higher than the turnoff or entry road into Booneville. The decedent in proceeding west on the highway and north on the turnoff road was afforded an unobstructed view to the west for 783 feet to the east end of a railroad bridge and then the view to the west was obstructed if at all only by the open cross sections on the bridge. On the north side of the tracks there is a stop sign and a crossbuck sign. No such signs were present on the south side of the track as the decedent approached. The accident occurred at 10:15 P.M. on a clear night. The train was travelling from west to east at a speed of 55 to 59 miles per hour. There were two headlights on the train which projected a beam from 200 to 400 yards down the track. The whistle of the train commenced blowing several hundred yards west of the crossing and continued *916 to blow until the time of impact. According to witnesses the decedent was driving the tractor trailer rig at a speed of approximately 10 miles per hour. A reconstruction expert called by plaintiff testified that if the train was travelling 56 miles per hour it would have taken 9.5 seconds to travel the 783 feet from the railroad bridge to the crossing and if the decedent had been proceeding at a speed of 14 miles per hour then to have stopped at the crossing he would have to have first observed the train at the latest when it was 604 feet from the crossing and at the earliest when it was 859.3 feet from the crossing.
The reconstruction expert testified that the decedent could have been looking into his right outside rear view mirror in order to make sure that his equipment was clearing the corner of the intersection as he swung the unit onto the road going north which led to the crossing. The expert further testified in detail as to his opinion of the time involved in the decedent perceiving that a train was coming in his direction. He testified that it was reasonable that the decedent would take as long as one-half of a second to perceive the train was coming, that it was reasonable that one more second would be consumed as the decedent comprehended the hazard and risk and that one further additional second would be used by the decedent to decide in the emergency facing him as to what action he should take to safeguard himself.
It is the defendants' contention that this evidence when viewed most favorably to the plaintiff shows either that the decedent was not keeping a proper lookout or that he was proceeding at a rate of speed which for his particular rig made the collision unavoidable and therefore the decedent was guilty of contributory negligence.
 10 It is recognized in the Pedrick case that where a substantial factual dispute is disclosed by the evidence, either on the issue of plaintiff's due care or defendant's negligence, or where an assessment as to credibility of witnesses and an election between conflicting evidence may be decisive, the constitutional right of the parties to a jury determination should be carefully preserved and it would be erroneous to direct a verdict in such cases. The question, therefore, is whether the record in this case requires or justifies the direction of a verdict. Wolfe v. Whipple, 112 Ill. App.2d 255, 251 N.E.2d 77.
 11, 12 We are not now faced nor are we authorized to determine questions of fact when motions are made for a directed verdict or judgment notwithstanding the verdict. Instead we must determine whether the evidence when viewed in its aspects most favorable to the nonmoving party so overwhelmingly favors the movant that a contrary verdict for the opponent could not stand.
When the evidence in the case before us on appeal is viewed in its *917 aspects most favorable to the plaintiff we find that decedent was awake, having put on his turn signals, he was wearing a seat belt, he was driving 10 to 14 miles per hour and he had to devote for some period of time his attentions to the traffic and conditions on highway No. 6 as he turned onto the approach which led to the crossing. There was no railroad crossbuck sign on the decedent's side of the track. There is evidence in the record which may well explain the circumstances of the decedent driving into a collision with a train and there was also a question as to the degree of familiarity the decedent had with the crossing based upon his four previous all-night stops in Booneville, the last being six months prior to the date of the accident.
The defendants cite a number of cases illustrating the standard of care or type of conduct which should be followed if one is to be free from contributory negligence. In affirming submission of issue of plaintiff's decedent driver's contributory negligence to the jury in a railroad crossing case Mr. Justice Cardozo said:
"Illustrations such as these bear witness to the need for caution in framing standards of behavior that amount to rules of law * * *. In default of the guide of customary conduct what is suitable for the traveler caught in a mesh where the ordinary safeguards fail him is for the judgment of the jury." Pokora v. Wabash Ry. Co., 292 U.S. 98.
The case of Skala v. Lehon, 258 Ill. App. 252, is cited as authority for the principle that a person who gives another reasonable cause for alarm cannot complain when that person so alarmed does not exercise cool presence of mind in reacting to it; that the latter's conduct should be judged not in the light of what later events reveal would have been better or safer but against the standard of how a reasonable man would have reacted under circumstances of the same sudden alarm.
 13-15 Based upon the record we believe that there are a number of facts which required submission to a jury the proposition of whether plaintiff's decedent was free from contributory negligence and whether the defendants were guilty of negligence.
The defendants argue that reversible error was committed by the trial court in its ruling on certain objections to evidence. Specifically the court permitted an expert witness to testify that he considered the railroad crossing one of the most dangerous he had ever seen; the court permitted a reconstruction expert to testify; that the plaintiff was permitted to introduce into evidence certain traffic device manuals; testimony relative to whether the defendant railroad had notified public authorities of the absence of a warning sign and crossing sign was permitted to be introduced, and the court permitted the plaintiff to introduce into evidence an intra-company letter of the defendant railroad. The defendants objected *918 to the ruling of the trial court permitting all of this evidence to be submitted to the jury.
 16 A railroad crossing protection expert, being a plaintiff's witness, in response to a question propounded to him on direct examination in regard to the railroad crossing in question stated:
"Based upon my experience and observation of thousands of transactions, I consider this one of the most dangerous that I have ever seen."
The defendants argue that in permitting this testimony it had the effect of invading the province of the jury in deciding the basic issue of the case. The defendants cite a number of cases in support of their contention, including Hughes v. Wabash R.R. Co., 342 Ill. App. 159, 95 N.E.2d 735. However, we believe that the law regarding this question was settled in Merchants National Bank of Aurora v. The Elgin, Joliet & Eastern Railway Co., 121 Ill. App.2d 445, 257 N.E.2d 216. In this case the court stated:
"Cases from other jurisdictions which involve a specific question of expert opinion as to the hazardous nature of a railroad crossing are not in agreement. We believe the better reasoning delineates a trend toward permitting such testimony in the sound discretion of the court when the witness has a peculiar knowledge or experience not common to the world in general which may aid the finder of fact in determining the issues before it. The court and jury is, of course, not bound to accept the conclusions of the expert. See Shutka v. Pennsylvania R.R. Co., 181 F.2d 490, 409 (N.J. 1962); Southern Pacific Company v. Watkins, 435 P.2d 498, 508 (Nev. 1967); Bridger v. Union Railway Company, 355 F.2d 382, 387 (C.C.A. 6, 1966)."
The plaintiff presented the opinion testimony of a traffic accident reconstruction expert relative to the time which expired when the decedent first perceived his dangerous situation, comprehended the problem and decided on a course of action. Also opinion testimony was received from the expert as to the time used by the decedent in applying his brakes, and further he gave evidence as to the approximate speed of the truck just prior to the collision. The defendants urged that such testimony is in error and especially so since eyewitness testimony was available. The most recent pronouncement by our Supreme Court concerning testimony of a reconstruction expert is found in Plank v. Holman, 46 Ill.2d 465, 264 N.E.2d 12. The court stated in the Plank case:
"A similar problem exists with the testimony of the reconstruction expert. In Miller v. Pillsbury Co., 33 Ill.2d 514, 516, 211 N.E.2d 733, 735, this court stated `we are of the opinion that expert testimony on reconstruction of an automobile accident should be admissible where it is necessary to rely on knowledge and application of principles of *919 physics, engineering and other sciences beyond the ken of the average juror.' However, reconstruction testimony may not be used as a substitute for eyewitness testimony where such is available. Whether it may be used in addition to eyewitness testimony is determined by whether it is necessary to rely on knowledge and application of principles of science beyond the ken of the average juror. In this case this would be determined by the trial court after the testimony of the plaintiff as to the cause of the accident."
 17 Following the rule set forth in Plank we must determine whether the opinion testimony of the reconstruction expert in the case before us was used as a substitute for eyewitness testimony or was it in addition thereto, and was necessary because certain knowledge and application of the principles of science were beyond the ken of the average juror. The record discloses that the plaintiff's expert did not reconstruct the collision itself. He offered no opinion as to speed based upon skid marks. He did not compute the angle of impact, nor did he offer opinion testimony as to the speed of the train and the speed of the truck based upon an analysis of collision damage. In fact, there was no reconstruction evidence relating to the actual collision. It is true that there were three eyewitnesses to the collision, namely, an observant truck driver and the engineer and brakeman of the train involved. However, none of these witnesses were able to assist the jury as to time and distances involved, e.g., braking time and air brake lag time. This information we believe should have been provided to the jury. Certainly the computation of such information is beyond the ken of the average juror. We believe that the determination of the trial court to permit the plaintiff's expert to testify as to such matters was a correct determination and did not constitute error.
 18, 19 The trial court further admitted into evidence the Uniform Traffic Control Device Manual of Iowa and photostatic enlargements of two pages of that particular manual relating to crossbuck signs and advance warning signs at railroad crossings. Also admitted was the Federal Uniform Traffic Control Device Manual. The admission of these exhibits was objected to by the defendants. Prior to admission of the crossing protection standards of the Iowa Uniform Traffic Control Device Manual the plaintiff proved by testimony of the defendant Throckmorton that the railroad had followed the recommendations contained in this manual as standards of reasonable care as far as signing, lighting and barricading at grade crossing was concerned. It was further proved by the plaintiff that the railroad crossing protection standards were national standards and that the defendant railroad used as a standard the Federal Uniform Traffic Control Device Manual which defense counsel conceded to be identical with the Iowa manual. The trial court instructed the jury on *920 the limited use of the manual. The trial court was correct in the admission of the exhibits for certainly they could assist the jury in determining the question of reasonable care. Such evidence was a relevant aid to the jury in deciding what was feasible and what the railroad knew or should have known concerning grade crossing protection standards. (See Darling v. Charleston Community Memorial Hospital, 33 Ill.2d 326, 211 N.E.2d 253.) The defendants contend that the code of Iowa requires only one crossbuck sign at a railroad crossing and that the manual requiring two such signs contravenes the very statute which authorized its existence. We fail to see the pertinency of such an argument since we doubt if the legislature of Iowa ever intended, if indeed it would have any right or power to deprive courts and juries of their function of determining in individual cases whether the defendants conduct measured up to the standards of reasonable care under the circumstances; and consequently the fact that statutory requirements are fully complied with does not prevent a finding by a jury that the railroad was negligent in not providing additional warnings or signals. (Chicago G.W.R. Co. v. Kowalski, 92 F. 310; Mast v. Illinois C.R. Co., 79 F. Supp. 149.) We fail to find that the trial court was in error in admitting into evidence the manuals and photographs.
The trial court permitted the introduction of testimony to the effect that neither the defendant railroad or the defendant Loftus who performed an engineering survey of the crossing ever notified the public authorities that the advance warning sign was missing. The defendants claimed that this testimony constitutes prejudicial error since the court by its ruling permitted the jury to believe that the defendant railroad could be found negligent either in failing to erect an advance warning sign or in failing to notify the public authorities of its absence when in fact it was a duty of the county authorities to see to the installation of such a sign. It should be noted that the trial court instructed the jury as follows:
"Railroad companies are not required to place so-called advance warning signs on the road or highway in advance of the approach to a railroad crossing. This is solely the responsibility of the public authorities."
 20 This instruction negates defendants' contention that the jury would be led to believe that the installation of such signs was the duty of the defendant railroad. We do not find that the trial court abused its discretion in permitting the introduction of evidence objected to. Testimony as to whether the defendant railroad notified public authorities as to the absence of an advance warning sign is admissible since it is relative to the question of due care and reasonable conduct on the part of the defendant. *921 "Standards of prudent conduct are declared at times by courts but they are taken from facts of life * * *." Pokora v. Wabash Ry. Co., supra.
 21, 22 The trial court permitted the introduction in evidence of an intra-company letter to the defendant railroad. In this correspondence an employee of the railroad described the crossing as "a very dangerous situation," "a serious problem," "a very dangerous setup," and recommended that the railroad engineering department make a study with respect to the installation of warning signals. The defendant railroad contends that the admission of the correspondence in evidence was error in that the author of the letter was referring to and describing conditions that would confront a southbound traveler and that the decedent had been traveling north at the time of the fatal collision. We agree with the defendant that admissions as well as other types of evidence must be relevant to the issues, however, we believe that the admissions in the correspondence were relevant in that the writer was referring to the crossing in general and did not limit his views and recommendations with only southbound traffic in mind. The jury also had before it the testimony of a police officer who described the crossing from which description the jury could conclude whether it was dangerous when approached by the northbound traveler as well as one traveling south. We believe that read in its entirety there is sufficient privity between the letter and the issues to be decided by the jury to justify its admission into evidence.
 23, 24 The defendants tendered an instruction which stated "that if the jury found plaintiff's decedent sufficiently familiar with the railroad crossing, that he knew or in the exercise of ordinary care should have known of its whereabouts, then he was not entitled to rely on an advance warning sign or an additional crossbuck but was obliged to exercise due care for his own safety in the light of his knowledge." This instruction was refused by the court and the defendants allege error. "Instructions are to be given in clear and intelligent language and inform the jury what the issues are, the principles of law applicable to be observed and the facts material to be proven to justify their verdict." (Smith v. City of Rock Island, 22 Ill. App.2d 389, 161 N.E.2d 369.) The instruction tendered by the defendants failed to meet the criteria set forth in the Smith case in that it did not clearly set forth the issues, but had the effect, if given, of permitting the defense to argue its case through the use of an instruction. The trial court did not err in refusing this instruction.
 25 Lastly the defendants contend that the jury's verdict is excessive and should not be permitted to stand. The verdict returned by the jury was in the amount of $449,757.00 and is acknowledged by both the plaintiff and defendants to be the largest death verdict ever returned *922 under Iowa law. It is true that the decedent was but 37 years of age, well employed, conscientious, responsible and left surviving him a wife and four minor children, yet we cannot reconcile the amount of the verdict with any accepted standards of computing damages or loss of support. The interest yield alone on the investment of such a sum would far exceed the actual or anticipated earnings of the decedent. After a careful analysis of the verdict we can only conclude that it is excessive. We therefore find that there should be a remittitur in the amount of $199,757.00, and if the plaintiff-appellee will file a remittitur in this court on or before thirty days from the date of the receipt by counsel for plaintiff-appellee of a certified copy of this opinion, judgment will then be entered in this case in the sum of $250,000.00; otherwise said case is remanded to the circuit court of Rock Island County for a new trial.
Affirmed upon remittitur, otherwise reversed and remanded.
ALLOY, P.J., and STOUDER, J., concur.