(No. 44876.—

LEVA ADKINS, Admr., Appellee, v. CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY *et al.,* Appellants.

*Opinion filed June 4, 1973.—Rehearing denied September 27, 1973.*

512

GOLDENHERSH, J., dissenting.

EUGENE R. JOHNSON, of Peoria, B. A. WEBSTER, of Des Moines, Iowa, and WILLIAM M. WALKER, of Rock Island (WESTERVELT, JOHNSON, NICOLL & KELLER; GAMBLE, RIEPE, MARTIN & WEBSTER; and CORYN, PATTON and WALKER, of counsel), for appellants.

PHILO, MAKI, RAVITZ, COCKREL, ROBB, KARFONTA & SPEARMAN, of Detroit, Michigan; LAWYER, LAWYER & RAY, of Des Moines, Iowa; and KLOCKAU, McCARTHY, SCHUBERT, LOUSBERG & ELLISON, of Rock Island (HARRY M. PHILO, VERNE LAWYER, and FRANK G. SCHUBERT, of counsel), for appellee.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

The circuit court of Rock Island County entered judgment upon a jury verdict in the amount of $449,757 in favor of the plaintiff, Leva Adkins, administratrix of the estate of Everett Harmon Adkins, deceased, against the defendants, Chicago, Rock Island and Pacific Railroad Company, W. B. Throckmorton, and R. V. Loftus. The appellate court ordered a remittitur in the amount of $199,757 and affirmed. (*Adkins v. Chicago, Rock Island & Pacific R.R. Co. (1971), 2 Ill. App. 3d 906.*) We allowed the defendants' petition for leave to appeal.

The plaintiff's decedent, Everett Harmon Adkins, was killed on October 6, 1966, when the tractor trailer he was driving was struck by the defendant railroad's train at a railroad crossing at Booneville, Iowa. On October 18, 1966, the plaintiff, a resident of Michigan, brought an action in the United States District Court for the Southern District of Iowa. The railroad, a Delaware corporation doing business in Iowa, Illinois and other States, was the sole defendant. Depositions were taken and interrogatories and admissions were filed and answered, and the case was set for trial on September 11, 1967. After certain rulings were made at a pretrial hearing, the plaintiff moved for a continuance, and the case was reset for trial on December 5, 1967. It was not tried, however, because on November 9, 1967, the case was dismissed on the plaintiff's motion.

On January 16, 1968, the plaintiff instituted the

present action in the circuit court of Rock Island County, again naming the railroad as the sole defendant. On March 15, 1968, a motion to dismiss on the ground of *forum non conveniens* was filed by the railroad. Before the court ruled on the motion, the plaintiff filed an amended complaint on May 14, 1968. The amended complaint added W. B. Throckmorton, chief engineer, and R. V. Loftus, traffic engineer, of the railroad, both of whom were Illinois residents, as defendants. The trial court then denied the motion to dismiss, and thereafter the case proceeded to trial. Both the railroad and the individual defendants raised the issue again in their post-trial motions.

On this appeal the defendants contend that the trial court erred in not dismissing the case on the ground of *forum non conveniens.* They also urge that the trial court erred in admitting certain evidence, and in instructing the jury. Because we are satisfied that the motion to dismiss should have been granted, we do not discuss the other alleged errors.

*Forum non conveniens* is a doctrine that is founded in considerations of fundamental fairness and sensible and effective judicial administration. In the application of these basic considerations a court may decline jurisdiction of a case "even though it may have proper jurisdiction over all parties and the subject matter involved" (*Whitney v. Madden (1948), 400 Ill. 185, 189, cert. denied, 335 U.S. 828, 93 L. Ed. 382, 69 S. Ct. 55*), whenever it appears that there is another forum that can better "serve the convenience of the parties and the ends of justice." (*Lonergan v. Crucible Steel Co. of America (1967), 37 Ill.2d 599, 606.*) Factors to be considered in disposing of a motion to dismiss *forum non conveniens* include the relative capacities of the two courts to provide a fair trial, the relative inconvenience to witnesses and parties, and the burden placed upon the taxpayers and residents of the jurisdiction to which the cause of action is transported.

The railroad was the sole defendant in the complaint filed in the circuit court of Rock Island County. The only connection Illinois had with the lawsuit was that the railroad does business here. This fact is not significant in determining a motion to dismiss on the ground of *forum non conveniens,* because such a motion assumes that both courts can obtain jurisdiction over the defendant. The plaintiff is a resident of Michigan, as was the deceased before his death. The collision with which the action is concerned took place in Iowa, over 200 miles from Rock Island, Illinois. This means that a jury in Iowa could view the scene of the accident, but an Illinois jury could not. It also means that the rights of the parties are to be determined by the law of Iowa, and certainly an Iowa judge is in a superior position to make that determination. A fair trial means a prompt trial, and the Annual Report of the Administrative Office of the Illinois Courts shows that in 1968, when the motion to dismiss was made, the average delay between the date of filing and the date of verdict in civil cases in the 14th Judicial Circuit, which includes Rock Island County, was 18.5 months.

All of the factors normally considered thus point to the conclusion that Rock Island County is not an appropriate forum for the trial of this case. That conclusion is reinforced by the unusual circumstances of this case. The case was ready for trial in Iowa more than a year and a half before it was tried in Illinois. The case in Iowa was voluntarily dismissed by the plaintiff, who was dissatisfied with pretrial rulings of the Iowa judge concerning the admissibility of certain evidence. Some of those rulings involve questions that have been raised in this court. What we have, then, is in practical result an appeal to the Illinois courts from the rulings of the Iowa judge. This is unseemly business, and in our opinion the denial of the motion to dismiss, which was accompanied by a waiver of the statute of limitations, was an abuse of discretion.

Our conclusion is not altered by the circumstance that

the two individual defendants, one of whom was a resident of Cook County, Illinois, and the other a resident of Will County, Illinois, were added as defendants. They were not added until four months after the present action in Illinois was commenced, and more than a year and a half after the plaintiff first sued the railroad in Iowa. For many years our statutes have expressed the policy of this State against the joinder of defendants "without probable cause and not in good faith for the purpose of obtaining a judgment against him but solely for the purpose of fixing venue in that county." (See, Ill. Rev. Stat. 1971, ch. 110, pars. 5, 9; see also, Hurd's Stat. 1908, ch. 110, par. 6.) Interpreting this language, the appellate court stated in *Green v. Unity Container Corp. (1955), 7 Ill. App. 2d 215, 221*: " 'Good faith' is hardly capable of an exact definition; it consists of an honest intention to abstain from taking any unconscientious advantage of another, even through forms and technicalities of the law. 'Probable cause' is a reasonable belief that the claim on which the suit is brought is valid."

It seems apparent that the individual defendants were joined in order to make the Illinois action look different from the Iowa action, and thereby provide some sort of basis upon which the denial of the motion to dismiss could be predicated. While this situation is not governed by the language of our venue statutes, it is clear that the policy expressed in those statutes applies to the present situation.

Whether persons occupying the positions of the individual defendants in this case are liable in tort to a plaintiff who suffers injuries as the result of a defective grade crossing is not clear as a matter of substantive law. We have found no Iowa decisions indicating liability, and the defendants in their reply brief have set forth the decision of the United States District Court for the Southern District of Iowa, in *White v. Chicago, Rock Island and Pacific Railroad Co.* (Civil No. 5–121–D, S.D. Iowa, March 3, 1972), holding, in a similar situation, that individual employees of a railroad are not liable. We are

not convinced that the individual defendants were joined with probable cause and in good faith for the purpose of obtaining a judgment against them.

The judgments of the circuit and appellate courts are reversed, and the cause is remanded to the circuit court of Rock Island County, with directions to grant the motion to dismiss.

*Reversed and remanded, with directions.*

MR. JUSTICE GOLDENHERSH, dissenting:

I dissent. I agree with the circuit and appellate courts that upon this record the doctrine of *forum non conveniens* is clearly inapplicable and assuming, *arguendo,* that there was an issue here of *forum non conveniens,* the majority have disregarded the rule that the trial court's decision will not be disturbed unless the record shows an abuse of discretion.

Prior to discussing the legal issues it is essential to correct a factual error in the majority opinion. The majority states: "The collision with which the action is concerned took place in Iowa, over 200 miles from Rock Island, Illinois. This means that a jury in Iowa could view the scene of the accident, but an Illinois jury could not." The undisputed fact is that the highway and railroad crossing have been completely rebuilt and it will not be possible for a jury to view the scene; nor does the record reflect either that such is the custom in Iowa, or that it was possible to do so, or that such was the intent, when the case was pending in the United States District Court in Des Moines.

The majority, relying solely upon an unreported decision of a Federal District Court Judge, conclude that under Iowa law plaintiff cannot prove a cause of action against the defendants Throckmorton and Loftus. It should be noted at this point that the residence of these gentlemen in Illinois is no happenstance, as the undisputed

fact is that the defendant railroad is not merely doing business in Illinois, but that its principal offices are located in Chicago and these two executives are stationed there. Further, as will be demonstrated, neither the decision relied upon nor the opinions of the Iowa Supreme Court support the majority's conclusion, and under Iowa law the record presented an issue of fact as to whether these individual defendants, along with their employer, are liable to the plaintiff.

In the unreported decision upon which the majority rely, the United States District Judge allowed a motion to remand to the State court a case which had been removed to the district court. In his decision the district judge, relying on four Iowa cases, *Cramblitt v. Percival-Porter Co. (1916), 176 Iowa 733, 158 N.W. 541; Wendland v. Berg (1919), 188 Iowa 202, 174 N.W. 410; Montanick v. McMillin (1938), 225 Iowa 442, 280 N.W. 608;* and *Moore v. Murphy (1963), 254 Iowa 969, 119 N.W.2d 759,* held that the allegations of the complaint did not state a cause of action against the individual defendants. The charges of negligence in those pleadings are clearly distinguishable from the negligence which was charged and proved against the two individual defendants in this case. The district judge also recognized that "Although there is authority for the rule that an agent or employee is not liable for mere nonfeasance or omission to perform a duty owed to the principal or employer, the court believes the law now seeks to determine whether the employee owes a duty to the public as well as the employer which has not been performed, whether nonfeasance or misfeasance. [Citations.] It is therefore necessary to look to the charges of negligence to see whether any one or more possibly states a duty owed these plaintiffs by the individually named defendants."

The Iowa rule is stated in *194 Iowa 926, 935, 189 N.W. 824, 828,* wherein the Supreme Court of Iowa said:

"If the agent is put in control of the situation with the express or implied consent of the principal or is given or exercises such powers within his authority that an independent actor would have, it is quite generally held that he owes a duty to third persons to use due care in what he does, the same as any other individual. Such a control of property imposes upon him a duty, not altogether and simply as agent, but as a custodian and controller of such property for the purposes in hand. The fact that he also owes a special duty to his principal is not material.

It may be conceded he owes such a duty and his failure to perform properly may be considered as nonfeasance to his principal, but it is misfeasance to a third person injured thereby. Briefly stated the negligence of the agent converts what otherwise would have been a proper performance of his duties into misfeasance."

An examination of the cases cited in the opinion of the district judge shows that although distinguishable on the facts, they do not conflict with the holding in *Emery*.

The record shows that the defendant Throckmorton was chief engineer for the defendant railroad and defendant Loftus was his assistant. They were directly responsible for the safety of the crossing, had made inspections of the scene and for a period of at least two years prior to the occurrence were aware of the hazardous conditions which prevailed. Loftus testified that he made a survey of the crossing in 1964 and reported to Throckmorton that because of the "exposure factor" automatic protection of the crossing would "merit consideration." At that time he did not notice whether there were two crossbuck signs at the crossing, and if he had noticed that there was no sign south of the crossing he would have had one installed. Prior to that time, there had been correspondence between

defendant Throckmorton and a Mr. Norman, a railroad-crossing engineer for the Iowa State Highway Commission, concerning the installation of flashing light signals with a rotating stop sign and possible short arm gates. Loftus testified that "The only objection we had to the proposal, we didn't believe it needed gates. We agreed with Mr. Norman that flashing lights and rotating stop sign would take care of the situation. The minimum time of advance warning that automatic signal gives the motorist on the highway of the approach of a train is twenty seconds, plus a lag of three seconds. It was the exposure factor at the Booneville crossing that indicated the need for automatic signals in 1964. We asked the State Highway Commission what kind of figure they would give us on this road, and they told us around four hundred and fifty, I believe, and we immediately could see that this was justified movement on the part of the public authorities and the railroad to come to an agreement and put flashing lights in."

As stated by the appellate court the applicability of the doctrine of *forum non conveniens* "presupposes at least two forums in which the defendant is amenable to process." (2 Ill. App. 3d 906, 912.) The record fully supports the appellate court's statement "that prior to verdict there was never available a choice of forum, since Illinois was the only state in which all three defendants could be sued. At no time did thy individual defendants Throckmorton and Loftus consent or in any way indicate that they would consent to be sued in any state other than Illinois, their state of citizenship and residence. It is significant that the defendants Throckmorton and Loftus never raised the issue of *forum non conveniens* at any time prior to verdict. In fact, there was never any claim, affidavit or motion prior to trial in which the individual defendants Throckmorton and Loftus contended that the complaint against them should be dismissed or that the pending action should be heard by a forum other than the circuit court of Rock Island County." 2 Ill. App. 3d 906, 912.

The majority conclude that the dismissal of the case in the Federal court in Iowa was "unseemly business" impelled by some devious or improper motive. Rule 41(a)(2) of the Federal Rules of Civil Procedure provides that except under enumerated circumstances not here present, "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." The record does not disclose whether the defendant railroad objected to the dismissal of the case, and in any event, dismissal under Rule 41(a)(2) is a matter for the discretion of the trial court. (*Johnston v. Cartwright (8th Cir. 1966), 355 F.2d 32.*) Since the majority presume that an Iowa judge "is in a superior position" to determine the rights of the parties under Iowa law, it may be presumed that the United States District Judge, sitting in Iowa, who granted plaintiff's motion to dismiss without prejudice was aware of the Eighth Circuit's decision in *Johnston,* particularly since he was also the trial judge who dismissed that case and now serves on the Court of Appeals for the Eighth Circuit. It may further be presumed that the district judge would not have made a discretionary ruling without a sound basis for so doing, and that had there been any indication of the improper motives which the majority attribute to plaintiff, he would have denied the motion.

The majority state that as the result of the circumstances shown "What we have, then, is in practical result an appeal to the Illinois courts from the rulings of the Iowa judge." And in reaching its conclusion the majority state: "It seems apparent that the individual defendants were joined in order to make the Illinois action look different from the Iowa action, and thereby provide some sort of basis upon which the denial of thy motion to dismiss could be predicated. While this situation is not governed by the language of our venue statutes, it is clear that the policy expressed in those statutes applies to the present situation." Adopting the majority's definitions of "good faith" and "probable cause" (*Green v. Unity*

*Container Corp., 7 Ill. App. 2d 215, 221*) an examination of this record shows that the defendant railroad was not even inconvenienced, let alone "taken advantage of," by being required to try this case in Rock Island County, and the fact that the jury returned a verdict against the individual defendants, which was approved by the circuit court and affirmed by the appellate court, is certainly strong evidence of a "reasonable belief" that plaintiff had a valid claim against them. However the majority may choose to characterize their decision, the effect of it is that this court, without an evidentiary basis for so doing, has reversed a discretionary ruling of the circuit court and has held that the dismissal, approved by a Federal judge vested with discretion to allow or disallow it, was for an improper motive.

In *Fender v. St. Louis Southwestern Railway Co., 49 Ill.2d 1,* in which case the writer recused himself, the court said, "The discretion to be exercised in ruling on a *forum non conveniens* motion is that of the trial court. (*Whitney v. Madden (1948), 400 Ill. 185, 190; People ex rel. Chesapeake and Ohio Railway Co. v. Donovan (1964), 30 Ill.2d 178, 180.*) In this case the appellate court reversed the trial court, apparently not because that court had abused its discretion, but because the appellate court felt that the trial court's discretion had not been 'wisely exercised.' In our opinion the appellate court misapprehended its role and misapplied the governing principles." (49 Ill.2d 1, 4.) I respectfully submit that this court misinterpreted the holding of the appellate court in *Fender* that an examination of its opinion (125 Ill. App. 2d 211) shows that the appellate court did not misapprehend its role and that it applied the established rule that in reviewing a trial court's ruling to determine whether it was an abuse of discretion, a distinct difference is drawn between those rulings which also involved a finding of fact and those, as was the case in *Fender,* where there was no dispute as to the facts and the same documentary evidence

upon which the circuit court based its ruling was also before the appellate court. Furthermore, the language quoted from the appellate court's opinion is clearly taken out of context. The appellate court said: "From our review of the authorities, we conclude that before a motion to decline jurisdiction may be granted it must be apparent that the first three conditions enumerated in Whitney, i.e., the existence of an appropriate forum, the nonresidence of the parties, and a transaction which did not take place in Illinois are present along with one or more of the remaining conditions: i.e., the bringing of the action in Illinois for the purpose of frustrating the defendant, the undue burdening of and great and unnecessary inconvenience to the defendant, or the unnecessary burdening of the court. We have searched Cotton for other 'appropriate factors to be considered,' as suggested in Donovan, and except for the one expressly disavowed by the court, fail to find any which modify the requirements enumerated in Whitney." (125 Ill. App. 2d 211, at 217.) After discussing the appropriate scope of review the court said: "This court has reviewed, and has presently pending, cases brought under F.E.L.A. and arising from occurrences in other states. From our knowledge of the records in those cases, we conclude that although some additional expense may be incurred for travel and maintenance, the absence of subpoena power is not a material factor in compelling the attendance of employee witnesses. In many cases reviewed by this court, both F.E.L.A. and others, much of the medical testimony adduced by both plaintiffs and defendants is that of physicians practicing in St. Louis, Missouri, not amenable to subpoena, and is introduced in the form of evidentiary depositions. With respect to the testimony of nonmedical, nonemployee witnesses, defendant's motion and affidavit suffer from the deficiencies which appear to have been the deciding factors in Cotton. We conclude, therefore, that it is not, as required by the authorities, apparent that the action was brought in Illinois

for the purpose of frustrating, unduly burdening, or causing great and unnecessary inconvenience to the defendant. With respect to the question of whether retention of the case is an undue burden on the court, it is noted that both paragraph 12 of defendant's motion (supra) and plaintiff's assertion that 'the Circuit Court of St. Clair County does not have a large backlog of cases ....' (supra) state mere conclusions, there are no facts alleged by either party, and the trial court made no finding on this issue. As to the availability of another appropriate forum we quote from Lonergan v. Crucible Steel Co. of America, 37 Ill.2d 599, 299 N.E.2d 536, wherein at page 606, the court said: 'Defendants first assert that there is a serious backlog of cases in Cook County which requires reasonable restrictions on shareholders litigation against foreign corporations. This same argument was rejected in Cotton v. Louisville and Nashville Railroad Co., 14 Ill.2d 144. Here, as in the Cotton case, there is no evidence as to the condition of the courts' dockets in any other forum.' " (125 Ill. App. 2d 211, 218-219.) It should be further noted that there is little significance in either the 18.5 months "average delay" between filing and verdict mentioned in this case or the 21.7 months "average delay" mentioned in *Fender*. This "average" includes all cases without consideration of the cause of the delay and I know of no lawyer experienced in the trial of plaintiffs' personal injury cases who will not agree that a case of significance, involving substantial discovery procedures or a serious injury can rarely be prepared for trial in less than 18 months.

The majority say that "We are not convinced that the individual defendants were joined with probable cause and in good faith for the purpose of obtaining a judgment against them," and conclude that "the denial of the motion to dismiss, which was accompanied by a waiver of the statute of limitations, was an abuse of discretion." The record shows that the offer to waive the statute of

limitations was made for the first time in defendants' motions for judgment *n. o. v.,* contained no offer on the part of the individual defendants to accept service of Iowa process, and is limited to plaintiff's refiling "in the State or Federal Courts in Polk or Dallas County, Iowa." It is further noted that prior to the filing of those motions, the individual defendants had raised no issue of *forum non conveniens* and it is not readily apparent in what manner a post-trial motion could affect the trial court's discretion with respect to a ruling made prior to trial.

Until this case, the doctrine of "fundamental fairness" appears to have been limited in its application to those situations where basic constitutional rights were involved. I find it difficult to equate any alleged inconvenience which defendants may have suffered in being forced to try this case in the jurisdiction from which they operate the railroad system with a loss of a substantial constitutional right. "Fundamental fairness," if applicable to this record at all, would require the invocation of the rule enunciated in *Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 91 L. Ed. 1055,* where it is stated, at page 508, "But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."

By this decision the majority, without any evidentiary basis, have made findings of fact with respect to plaintiff's good faith, have contrary to the controlling Iowa decisions decided that there is "no probable cause" or "good faith purpose" in joining the individual defendants, and have decided not only that the trial court abused its discretion and that the appellate court erred, but also that the Federal district judge somehow abused his discretion when he permitted plaintiff to dismiss her action without prejudice. The record contains no basis to presume that the district judge was so lacking in perception as to fail to detect that plaintiff's motion for voluntary dismissal was filed for the "unseemly" purpose of taking "an appeal to the Illinois courts" from his rulings. I respectfully submit

that in this majority opinion, when considered with *Fender*, this court has effectively annihilated the few guidelines to be found in our earlier cases and bowdlerized the rule that the trial court's determination of a *forum non conveniens* question will not be disturbed unless the record shows an abuse of discretion.

This record reflects a lengthy trial and does not support defendants' contention that because it was held in Illinois they were in any manner inconvenienced, let alone prejudiced. It further reflects that the case was well and fairly tried by extremely able counsel who asked and gave no quarter. In my opinion to upset this verdict on the grounds set out in the majority opinion is a miscarriage of justice.

I do not agree with the opinion of the appellate court on the question of damages. The question of whether this verdict was excessive is one of substance, and not procedure, and must, therefore, be decided under the law of Iowa. In *De Toskey v. Ruan Transport Corp. (Iowa 1949), 40 N.W.2d 4, 6,* the Supreme Court of Iowa held that in a wrongful death case the verdict should not be disturbed "unless it [is] so flagrantly excessive as to raise a presumption that it was the result of passion, prejudice, or undue influence, and not the result of an honest exercise of the judgment and the lawful discretion of the jury." In *Schmitt v. Jenkins Truck Lines, Inc. (Iowa 1969), 170 N.W.2d 632,* the Supreme Court of Iowa affirmed a judgment awarding damages in the amount of $264,162.74 for the death of a 38-year-old mother of six minor children in 1965, who since her marriage had not worked outside her home. Based upon these decisions I would affirm the judgment in the amount of the jury verdict.